Edward T. and Billie R. PRATT, William D. and Anita Pratt, Jack E. and Crystal A. Pratt, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 75–3531.

United States Court of Appeals, Fifth Circuit.

April 14, 1977.

---

1. This test was recited in the district court's memorandum opinion. Record at 107.

James G. Vetter, Jr., Jerry D. Johnson, Dallas, Tex., for petitioners-appellants.

Scott P. Crampton, Asst. Atty. Gen., Tax Div., Dept. of Justice, Gary R. Allen, Joseph M. McManus, Attys., Gilbert T. Andrews, Acting Chief, App. Section, U. S. Dept. of Justice, Ernest J. Brown, Meade Whitaker, Chief Counsel, Internal Revenue Service, Washington, D. C., for respondent-appellee.

Before TUTTLE, GOLDBERG and CLARK, Circuit Judges.

TUTTLE, Circuit Judge:

In this consolidated tax case of three brothers and their wives the Pratts appeal from an adverse decision by the Tax Court.

The facts are not in dispute. The Commissioner has conceded error with respect to one prong of the Tax Court decision, and there remains as the sole issue on this appeal, the correctness of the Tax Court's decision that the management fees payable to the taxpayer husbands (hereinafter taxpayers), general partners in two limited partnerships, were includable in their income as part of their distributive share of partnership profits, or, in the alternative, as a "guaranteed payment" under § 707(c) of the Internal Revenue Code of 1954.

We affirm the decision of the Tax Court on the basis that the management fees deducted by the partnership were not properly deductible under § 707(a) of the Internal Revenue Code of 1954. We therefore do not reach the question whether the same amounts, if properly deductible, should have been reported as "guaranteed payments" under § 707(c) of the Code.

Briefly stated, the three taxpayers were general partners in a partnership created with a fourth person to build and own two shopping centers. The partnership agree-

ment contained the following two significant paragraphs:

"5. GENERAL PARTNERS AND THEIR CONTRIBUTIONS.

\* \* \* \* \* \*

Such General Partners [that is, taxpayers] shall contribute their time and managerial abilities to this partnership, and each such General Partner shall expend his best effort to the management of and for the purpose for which this partnership was formed. That for such managerial services and abilities contributed by the said General Partners, they shall receive a fee of five (5%) per cent of the Gross Base Lease Rentals of the said leases, and then the said General Partners shall receive ten (10%) of all overrides and/or percentage rentals provided for in said leases as a fee for such managerial services.

\* \* \* \* \* \*

8. RIGHTS, POWERS AND DUTIES OF GENERAL PARTNERS.

(a) The General Partners shall give their personal services to the Partnership and shall devote thereto such time as they may deem necessary, without compensation other than the managerial fees as hereinbefore set out. Any of the Partners, General or Limited, may engage in other business ventures of every nature and description, independently or with others \* \* \*."

It is not in dispute that the five per cent payment called for, for the services to be performed in the management of the projects by the three general partners, fairly represented the value of these services. During the years in question, 1967, 1968 and 1969 as to Parker Plaza Shopping Center, Ltd. and 1968 and 1969 as to Stephenville Shopping Center, Ltd., the management fees were credited to accounts payable to the three partners equally, though they were not actually paid during any of the years in question. Both limited partnerships maintained their accounting records and filed their federal partnership returns of income on the accrual basis of accounting. The partners maintained their books and filed their income tax returns on the cash basis method of accounting. Since the fees here in issue were not actually paid to them, the taxpayers did not report any of their respective management fees as income on their federal tax returns for the years in issue.[1]

The fact that the differing methods of reporting income by the partnership on the one hand and by the taxpayers on the other resulted in somewhat of an anomaly does not of itself, of course, require a holding in favor of the Government and against the taxpayers. The fact, however, that the tax returns of the individual taxpayer partners claimed advantages of losses which, in an economic sense did not truly exist, may explain the reason why the Commissioner considered it necessary to raise the issue.

■ Under the provisions of sub-chapter K of Chapter 1 of the Internal Revenue Code of 1954, encompassing §§ 701 through 771, a partnership is not itself a taxpaying entity, the respective partners being individually liable for their distributive shares of the partnerships' taxable income in the particular year. 26 U.S.C. §§ 701–704. It is not disputed that as a general rule, the taxable income of a partnership is computed just as an individual's taxable income would be, *i. e.,* the partnership's gross income is first established and then that amount is reduced by the deductions allowed by Chapter 1 of the Code. 26 U.S.C. § 161, *et seq.* and § 703(a). The partners are then required to report their respective distributive shares of "income, gain, loss, deduction, or credit income". § 704(a) which provides:

"A partner's distributive share of income, gain, loss, deduction or credit shall,

---

1. The net effect of this difference in accounting methods means that the partnership showed net losses several of the years, which the partners could then show as net losses in lieu of any distributive share on their personal income tax returns for the year. The net result would be that the individual taxpayers would get the benefit of net losses which represented payments purportedly made to them by the partnerships, but which they did not receive.

except as otherwise provided in this section, be determined by the partnership agreement."

Since historically partnerships were viewed for tax purposes under what was known as the "aggregate theory" the partnership was viewed merely as an aggregation of the activities of its partners. Thus, salary payments to a partner were treated as distributions of distributive income and were thus not deductible in computing partnership income. However, with the adoption of the Internal Revenue Code of 1954, Congress adopted an opposite approach in certain types of relationships arising between the partnership and its members. By adopting the provisions of subchapter K and particularly § 707(a), the law now gives a partnership an entity distinct from that of the individual partners in certain specific circumstances. Appellants here rely on § 707(a) as giving the partnership the right to deduct the five per cent management fees accrued on the books of the partnership as owing to the partners, but not paid to them, as qualifying under the following language of the section:

"If a partner engages in a transaction with a partnership *other than in his capacity as a member of such partnership* the transaction shall, except as otherwise provided in this section, be considered as occurring between the partnership and one who is not a partner." (Emphasis supplied.)

The question thus posed is whether the "transaction" encompassed by the partnership contract providing for the five per cent fees to the partners for their management services is a "transaction" which is carried out "other than in his capacity as a member of such partnership."

No cases have been cited to us in which the precise question has been before the appellate courts. *Cagle v. C. I. R.* cited by appellants, deals with a different sub-section, § 707(c). *Wegener v. Commissioner,* 119 F.2d 49 (C.A. 5, 1941) is a pre-sub Chapter K decision. The income tax regulations with respect to § 707(a) includes the following standard of construction: "In all cases, the substance of the transaction will govern rather than its form." We approach the construction of this provision of the statute, which, as noted above, carves out an exception to the general plan of treating of partnerships as "aggregations," by viewing the general purpose of the statute, including the exceptions and attempting to give a common sense application to the words used. While we recognize that the use of the "literal terms" or "plain meaning" construction of a statute does not obviate the need for further analysis, it is plain here that a meaning thus arrived at in the construction of § 707(a) would neither lead to an "absurd or futile result" or to "an unreasonable one." *Cf. United States v. American Trucking Assn.,* 310 U.S. 534, 543–44, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940).

■ It is perfectly clear that the contract creating the partnership, which provided for the percentage payments to the general partners for their management efforts was made with them *qua* partners. Furthermore, it is equally clear that the duties to be performed were activities for which the partnership was created in the first place, *i. e.,* the management of the shopping centers. Bearing in mind, that the general statutory policy for treating partnerships for tax purposes contemplated that the income of a partnership would flow through to the individual partners, it is not difficult to envision the purpose of Congress when it created an exception to this general rule to limit the excepted activities to those specifically outlined. In doing so, Congress determined that in order for the partnership to deal with one of its partners as an "outsider" the transaction dealt with must be something outside the scope of the partnership. If, on the other hand, the activities constituting the "transaction" were activities which the partnership itself was engaged in, compensation for such transaction must be treated merely as a rearrangement between the partners of their distributive shares in the partnership income.

In short, it is difficult to fault the Tax Court's reasoning when it said:

"Here, the record indicates that in managing the partnership petitioners were acting in their capacity as partners. They were performing basic duties of the partnership or business pursuant to the partnership agreement. . . . There is no indication that any one of the petitioners was engaged in a transaction with the partnership other than in his capacity as a partner. We therefore hold that the management fees were not deductible business expenses of the partnership under section 707(a). 64 T.C. 203 *et seq.*"

It is, of course, unimportant that the parties stipulated that the management fees were reasonable in amount or that a like amount would have had to be paid to a third party for these services if they were not paid to the partners themselves. It is not disputed that if these amounts had been paid to non-partners they would have been deductible as ordinary and necessary business expenses under § 162. This fact, however, has no bearing on the question whether, since they were paid to partners, they were paid for "transaction[s] with a partnership other than in his capacity as a member of such partnership." Similarly, the fact that the partners intended the fees to be expenses of the partnership cannot modify the limitations placed in the statute. In sum, the provisions of sub-chapter K provide a statutory scheme for the treatment of income received by a partnership and provide the manner in which it shall be taxed. The particular provision relied on by the taxpayers here simply does not permit a partnership to treat as a deduction for ordinary and necessary business expenses amounts paid to partners, as partners, for the performance of services for which the partnership exists.

The Tax Court also had before it the taxpayers' petition to set aside deficiencies determined by the Commissioner in his disallowing a deduction for interest payments accrued on the partnership books for interest due the taxpayers on promissory notes representing loans made by them to the partnership. The Commissioner has now reexamined his position on this issue and concedes that, since there is no dispute in this case that the taxpayers' loans to their partnerships were bona fide loans, the loan transactions are to be treated under § 1.707–1(a) of the Treasury Regulations, as coming within the provisions of § 707(a) and that the interest accrued on such loans therefore does not constitute a "guaranteed payment" under § 707(c). The Commissioner therefore states that he believes the decision below is incorrect to the extent it requires taxpayers to recognize as income the accrued, but unpaid, interest due them and joins taxpayers in seeking to have the decision below reversed on this issue.

The judgment of the Tax Court is AFFIRMED as to the treatment of the management fees, but is REVERSED as to the interest amount on taxpayer loans and the case is REMANDED to the Tax Court for further proceedings.