## IN THE MATTER OF THE TAX APPEAL OF ISLAND HOLIDAYS, LTD., TAXPAYER

NO. 5961

JULY 12, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY KIDWELL, J.

This appeal is from a judgment of the tax appeal court sustaining an assessment of the general excise tax upon payments made by a joint venture to Appellant, one of the members of the joint venture. During the periods involved, being

the calendar years 1971 and 1972, Appellant was a Hawaii corporation engaged in the operation of several hotels in this state. Pursuant to the joint venture agreement, Appellant managed and operated a hotel situated on property leased for the benefit of the joint venture and received in return guaranteed payments of 3% of the gross revenues from the hotel. We agree that the payments were taxable and affirm the judgment.

I

All of the parties to the joint venture agreement are corporations. The joint venture agreement was entered into in 1970 for a term of 75 years, and provided for the financing, construction and operation of the hotel by the joint venture, which was therein called the "Enterprise". Each of the parties to the joint venture, including Appellant, was required to contribute stated portions of the initial capital of $3,250,000, of which Appellant's share was $865,000, and to provide additional capital as required in stated percentages, which in the case of Appellant was 25%. The joint venture agreement allocated various responsibilities among the parties. In the case of Appellant (referred to in the agreement as "Island") the joint venture agreement contained the following provisions upon which this appeal turns:

2(d) "Island shall maintain the Building and the books and records of the Enterprise on behalf of the parties hereto and, as hereinafter provided, shall manage the Waikiki Beachcomber Hotel (Hotel) . . . ."

5(a) "For each year that Island acts for the Enterprise in the manner prescribed by this Agreement, it shall receive a guaranteed payment from the Enterprise of 3% of its gross revenues from the Hotel . . . ."

5(b) "The remaining net operating profits (losses) as determined on the books of the Enterprise using generally accepted accounting principles consistently applied shall be credited (debited) to the capital accounts" of the parties, including Appellant, in stated percentages.

7(a) *"Management Committee*. The Enterprise shall be supervised by a Management Committee of four members" selected by the parties, "which Management Committee shall, except as otherwise provided herein, have full authority to act hereunder on behalf of the Enterprise and shall be primarily responsible for the determination of policy matters . . . ."

7(b) *"Hotel Operation*. Subject to supervision by the Management Committee, Island will operate the Hotel on a day to day basis for the benefit of the Enterprise. Island will operate the Hotel for five years from the date hereof . . . . unless the Management Committee should relieve Island of its responsibilities hereunder for failure to operate the Hotel in a satisfactory manner. No payments shall be made or profits realized by Island for performing this function other than those set forth in paragraph 5 hereinabove during the initial five years hereunder . . . ."

The case was heard by the tax appeal court upon an agreed statement of facts. The stipulation of facts, which was incorporated by the tax appeal court into its findings, set forth that the payments by the joint venture to Appellant upon which the disputed tax was assessed were "guaranteed payments in the amount of three percent of the gross revenues of the joint venture." While not specifically so found by the court, there is no dispute that the payments were those provided for by paragraph 5(a) of the joint venture agreement and included no amounts paid pursuant to paragraph 5(b).

The disputed tax was assessed under HRS § 237-13, which imposes "privilege taxes against persons on account of their business and other activities in the State measured by the application of rates against . . . . gross income". The rate at which the tax was assessed is not in dispute, if the income was taxable. "Gross income" is broadly defined by HRS § 237-3 as including compensation for personal services and gross receipts derived from trade, business, commerce or sales, or received by reason of the capital of the business engaged in, with specific exclusions certain of which are

pertinent here and will be dealt with below. "Person" is defined by HRS § 237-1 as including every individual, partnership and joint adventure. Copies of the net income tax returns of the joint venture for the tax years involved here, included in the stipulation of facts, show that the joint venture paid general excise taxes for these years and we assume that the gross income by which the payments to Appellant were measured had been subjected to the general excise tax.

## II

For net income tax purposes, both federal and state, partnerships are generally viewed under what is known as the "aggregate theory", *i.e.*, the partnership is viewed as merely an aggregation of the activities of its partners. Thus partnerships as such are not subject to the net income tax imposed by the Internal Revenue Code of 1954, which is adopted and incorporated by HRS Chapter 235, and the partners are liable for the net income tax only in their separate capacities. Reg. 1.701-1. On the other hand, HRS Chapter 237, the general excise tax law, treats partnerships as taxable entities which are required to pay the general excise tax with respect to business in which they engage. HRS § 237-1. The liability, if any, of partners for the general excise tax with respect to gross income received as distributive shares of partnership income is not dealt with expressly in the general excise tax law. Appellee, the Director of Taxation, concedes that the general excise tax is not payable with respect to distributive shares of partnership income received by a partner, and that the joint venture in this case is to be treated as a partnership. For convenience, we shall refer to the joint venture indiscriminately as the joint venture or the partnership. The dispute between the parties, as dealt with in the briefs, is upon the issue whether the payments by the joint venture to Appellant are properly to be characterized as distributive shares of partnership income or as payments for services. Unfortunately, neither party has clearly defined the basic concepts which must govern the resolution of this dispute.

Appellant, while conceding that the joint venture is a taxable entity for the purposes of the general excise tax law, contends that the distribution of the income of the joint venture does not represent a business transaction between the members of the joint venture "but only the allocation of previously taxed income to its proportionate owners." Thus Appellant seeks to determine its tax liability upon the aggregate theory which generally governs for net income tax purposes. The Director counters this argument by saying, in effect, that the case is one in which the joint venture would be recognized as an entity in its dealings with Appellant, for certain net income tax purposes, and should consequently be viewed the same for general excise tax purposes. To deal with these arguments, we must look at the similarities and differences between the general excise tax law and the net income tax law.

Without explaining precisely how the provisions of the Internal Revenue Code become applicable in determining this general excise tax liability, the Director seeks to use the criteria of IRC §§ 707(a) and (c) in order to characterize the payments received by Appellant from the joint venture as taxable gross income. These sections provide:

(a) Partner Not Acting in Capacity as Partner.— If a partner engages in a transaction with a partnership other than in his capacity as a member of such partnership, the transaction shall, except as otherwise provided in this section, be considered as occurring between the partnership and one who is not a partner.

(c) Guaranteed Payments.—To the extent determined without regard to the income of the partnership, payments to a partner for services or the use of capital shall be considered as made to one who is not a member of the partnership, but only for the purposes of section 61(a) (relating to gross income) and, subject to section 263, for purposes of section 162(a) (relating to trade or business expenses).

We find the Director's reliance upon these provisions of the Internal Revenue Code to be of no assistance to him in the present case, for several reasons. The incorporation of the

Internal Revenue Code into the net income tax law by Chapter 235 does not make the provisions of the Code directly applicable in determining gross income for general excise tax purposes, although the general excise tax law and the net income tax law deal with sufficiently similar subject matter to require construction in relation to each other. *In re 711 Motors Inc.*, 56 Haw. 644, 547 P.2d 1343 (1976). IRC § 707 does not modify the aggregate theory of partnership net income taxation to the extent of making a partnership taxable as an entity, but only provides rules for determining the timing and character, for purposes of taxation to the partner, of distributions received by a partner from the partnership. *See generally*, Cowan, Compensating The General Partner: The Pratt Case, 56 Taxes 10 (1978). But, in any event, we are unable to conclude that the facts of this case would place it within the coverage of these sections even if they were deemed to be applicable.

IRC § 707(a) applies only with respect to a transaction engaged in by a partner with the partnership "other than in his capacity as a member of such partnership". In *Pratt v. Commissioner*, 550 F.2d 1023 (5th Cir. 1977) the facts paralleled the instant case. The taxpayer was a member of a general partnership created to build and own shopping centers. The partnership agreement obligated the taxpayer to provide management services for these projects, and provided for the payment to the taxpayer of a management fee of 5% of the gross base lease rentals. The question was whether the management fees were, under § 707(a), properly deductible by the partnership in its information tax returns as expense incurred in a transaction with a partner other than in his capacity as a partner. For the years in question the management fees were charged on the books of the partnership as expenses but not paid, thus creating net losses on the partnership books which enabled the partners to show net losses rather than distributive shares of partnership income on their personal returns for those years and had the effect of deferring to future years the taxation of the fees to the partners. The court noted that the Code provision carved out an exception to the general plan of treating partnerships as aggre-

gations and concluded that the facts before it did not fall within the exception.

It is perfectly clear that the contract creating the partnership, which provided for the percentage payments to the general partners for their management efforts was made with them *qua* partners. Furthermore, it is equally clear that the duties to be performed were activities for which the partnership was created in the first place, *i.e.*, the management of the shopping centers. Bearing in mind, that the general statutory policy for treating partnerships for tax purposes contemplated that the income of a partnership would flow through to the individual partners, it is not difficult to envision the purpose of Congress when it created an exception to this general rule to limit the excepted activities to those specifically outlined. In doing so, Congress determined that in order for the partnership to deal with one of its partners as an "outsider" the transaction dealt with must be something outside the scope of the partnership. If, on the other hand, the activities constituting the "transaction" were activities which the partnership itself was engaged in, compensation for such transaction must be treated merely as a rearrangement between the partners of their distributive shares in the partnership income.

*Pratt v. Commissioner, supra* at 1026.

The taxpayer had also claimed the benefit of IRC § 707(c), contending that the management fee was a payment for services which was determined without regard to the income of the partnership. In the Tax Court proceeding, this claim was rejected summarily with the observation that the partnership gross rental constituted partnership income, so that the management fee could not be considered as determined without regard to the income of the partnership. *Edward T. Pratt,* 64 T.C. 203, 210 (1975). On the appeal, the Circuit Court of Appeals also dismissed this claim summarily, but on the ground that the question of the status of the payments under § 707(c) was not reached because they did not fall within § 707(a).

*Pratt v. Commissioner, supra,* constitutes the most au-

thoritative interpretation of the Internal Revenue Code sections upon which the Director relies.[1] We conclude that the Director has not sustained his position by reliance upon the net income tax treatment of transactions between a partner and the partnership, even assuming the relevancy of those partnership tax accounting rules to a determination of gross income for purposes of the general excise tax. In effect, however, this conclusion tells us only that the exceptions made in the net income tax scheme to the generally pervasive treatment of partnerships as aggregations, rather than as recognized entities, would not embrace the facts of the instant case. To that extent the rejection of the Director's arguments favors Appellant, but it does not dispose of the case.

### III

Both the Appellant and the Director have presented this case as though the taxability of transactions between a partnership or joint venture and its members had received no attention from the legislature. However, HRS § 237-20, which surprisingly was not referred to by either party to this appeal in their briefs, provides (emphasis added):

§237-20 Principles applicable in certain situations. *A person or company having shareholders or members (a corporation, association, group, trust, partnership, joint adventure, or other person) is taxable upon its business with them, and they are taxable upon their business with*

---

[1] The Director relies chiefly upon *Carey v. United States*, 427 F.2d 763 (Ct. Cl. 1970). In that case the taxpayer was a partner in an accounting firm with a branch office in Tokyo, of which the taxpayer was in charge. The taxpayer received from the firm a "fixed annual distribution" in a stated amount and a proportionate share of the firm's net income. The taxpayer was held entitled to recover federal net income taxes paid on the fixed annual distribution, upon the ground that it represented income earned from sources outside the United States. The parties agreed that the fixed annual distribution was a guaranteed payment under IRC § 707(c). It does not appear that the fixed annual distribution was determined with regard to gross income of the partnership, as in *Pratt* and the instant case.

*it*. A person or company, whether or not called a cooperative, through which shareholders or members are pursuing a common objective (for example, the obtaining of property or services for their individual businesses or use, or the marketing of their individual products) is a taxable person, and such facts do not give rise to any tax exemption or tax benefit except as specifically provided. Even though a business has some of the aspects of agency it shall not be so regarded unless it is a true agency. The reimbursement of costs or advances made for or on behalf of one person by another shall not constitute gross income of the latter, unless the person receiving such reimbursement also receives additional monetary consideration for making such costs or advances.

The legislative history provides us with no indication of the source of this section or the intent of the legislature in enacting it. It became law on May 1, 1957 as part of extensive amendments of the general excise tax law, and preceded the enactment on June 7, 1957 of the net income tax law which incorporated IRC § 707. The underlined sentence has received no interpretation by this court.

It is fairly apparent, we believe, that the legislature intended by § 237-20 to provide guidance in dealing with precisely the problem which is now before us. Each sentence of the section provides a rule to be applied to a situation in which it may be unclear whether a transaction involves one or more than one taxable entity. We might wonder, but need not consider, whether any of the "principles" enunciated in Section 237-20 alter the conclusions which should have been reached by interpretation of the relevant provisions of Chapter 237 without the aid of Section 237-20. Nevertheless, the first sentence of the section makes it less necessary for us to probe the implications to be drawn in the present case from the designation of the joint venture as a taxable entity for the purposes of the general excise tax law. It is clear that resort to the aggregate theory is not available to avoid taxation of members of the joint venture "upon their business with it." However, while attempting to clarify certain circumstances under which its members might be taxable upon receipts

from a partnership or joint venture, in enacting Section 237-20 the legislature provided no guidance with respect to when such members might not be taxable upon such receipts. To a very considerable extent, it is that question which concerns us in this case.

In enacting Chapter 237, the legislature cast a wide and tight net. "Business" is defined by HRS § 237-2 as including "all activities (personal, professional, or corporate), engaged in or caused to be engaged in with the object of gain or economic benefit either direct or indirect," with the exclusion only of casual sales. The definition of gross income in HRS § 237-3, to which we have already referred, renders taxable, with only the exclusions and exemptions provided by the statute, all receipts by reason of the investment of the capital of the business engaged in. We have said that "the statute evidences the intention of the legislature to tax every form of business, subject to the taxing jurisdiction, not specifically exempted from its provisions." *In re Grayco Land Escrow, Ltd.*, 57 Haw. 436, 443, 559 P.2d 264, 270 (1977). A person engaged in the business of investing in shares of corporation stock is relieved from the tax upon receipts from such investments which constitute dividends as defined by the net income tax law. HRS § 237-3. No express exclusion from taxation of the proceeds of investments in partnerships and joint ventures is provided by Chapter 237. We do not have before us, however, the broad question of the taxability under the statute of the proceeds of such investments, since the Director has expressly conceded in this case that no tax is imposed where such proceeds constitute a distributive share of partnership income.

In the somewhat confusing circumstances of the present case, we find our inquiry narrowed to the question whether the payments to Appellant should be characterized as distributive shares of partnership income (not taxable under the Director's concession) or as income from business engaged in by Appellant with the partnership (taxable under HRS § 237-20). These categories overlap and it is necessary to draw a line between them. Any payment to a partner for services provided to the partnership, whether or not labelled as a

distribution of partnership income, reduces the income available for distribution to the partners and has the effect of a distribution of income. Accordingly, for federal net income tax purposes, a payment of salary to a partner where partnership profits were sufficient was prior to enactment of IRC § 707 treated as a distributive share of profits. *Cagle v. Commissioner*, 539 F.2d 409, 413 (5th Cir. 1976). To give effect to HRS § 237-20, the fact that the payment to the partner, with respect to business engaged in with the partnership, constitutes in the broad sense a distributive share of partnership income cannot be treated as controlling.

By creating in § 237-20 a class composed of persons or companies with shareholders or members, which class includes, among others, corporations, partnerships and joint ventures, the legislature equated the relationship of a partner to a partnership with that of a shareholder to a corporation. Business of a shareholder with a corporation which results in dividend payments is excluded from taxation by § 237-3. To avoid conflicts between §§ 237-20 and 237-3, the business of a shareholder with the corporation which may be subjected to tax under § 237-20 may not include the business of investing in shares of the stock of the corporation. There would be a distinct lack of symmetry in the operation of § 237-20 if the investment by a partner in the partnership were to be treated as taxable business engaged in by the partner with the partnership when the investment by a shareholder in the corporation is not so treated. It follows, in our opinion, that merely by making taxable the business of a partner with the partnership, § 237-20 does not make taxable distributions to a partner of the proceeds of the investment made by the partner in the partnership which are not taxable otherwise.

A payment by a corporation to a shareholder for services, however, is not a dividend excluded from the shareholder's gross income by § 237-3 and its taxation under § 237-20 creates no problem of reconciling those sections, whether or not the payment is charged against the corporation's income and thus is in effect a distribution of income to the shareholder. The fact that the same services, as in the case of management of income-producing corporation property,

generate income for the corporation which is also subjected to the general excise tax would seem to be no impediment to taxation of the fee received by the shareholder.[2] Symmetrical application of § 237-20 to partners and shareholders thus does not foreclose the taxation of payments made to a partner for services, as distinct from payments which are proceeds of the partner's investment, notwithstanding that the payments result in a distribution to the partner of partnership income.

The activities of Appellant which produced the income sought to be taxed here are clearly within the broad definition of "business" contained in § 237-2. The fact that those activities were engaged in pursuant to obligations assumed by Appellant in a joint venture or partnership agreement is not recognized in Chapter 237 as a ground for excluding them from the "business" characterization. The concepts employed by the legislature in writing the general excise tax law do not readily admit such an exclusion and we find no implication that the legislature intended that Appellant's receipts be free from taxation. If, as the Director concedes in this case, the legislature intended that distributive shares of partnership or joint venture income be immune from general excise taxation, that immunity was circumscribed by § 237-20. We conclude, therefore, that the payments to the Appellant by the joint venture in this case were subject to tax.

The judgment of the tax appeal court is affirmed.

*C. Michael Hare* and *Richard L. Griffith (Cades Schutte Fleming & Wright* of counsel) for Taxpayer, Appellant.

*T. Bruce Honda,* Deputy Attorney General, State of Hawaii, for Director of Taxation, Appellee.

---

[2] Under certain circumstances, the rate of taxation to the corporation of such income would be affected by HRS § 237-13(6). Salaries and wages for services rendered by an employee to an employer are, of course, not taxable. HRS § 237-24(6). *But see Pratt v. Kondo,* 53 Haw. 435, 496 P.2d 1 (1972).