T.C. Memo. 1996-173


UNITED STATES TAX COURT


LEON L. SICARD AND ELEANOR SICARD, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11870-93.                    Filed April 10, 1996


<u>Jonathan B. Dubitzky</u> and <u>Jesse M. Fried</u>, for petitioner.

<u>David N. Brodsky</u> and <u>Madlyn B. Coyne</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


WELLS, <u>Judge</u>: Respondent determined a deficiency in, and additions to, petitioners' Federal income tax as follows:

| | | Additions to Tax | | |
|------|------------|------------------|------------------|----------|
| <u>Year</u> | <u>Deficiency</u> | <u>Sec. 6653(a)(1)(A)</u> | <u>Sec. 6653(a)(1)(B)</u> | <u>Sec. 6661</u> |
| 1987 | $73,150 | $3,658 | 50% of the interest due on the deficiency | $18,288 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues to be decided in the instant case are: (1) Whether petitioners must include in their income for taxable year 1987 a payment made to them during that year by the White-Sicard Co. partnership (partnership); and (2) whether petitioners are liable for the additions to tax provided by sections 6653(a)(1) and 6661.

FINDINGS OF FACT

Some of the facts have been stipulated for trial pursuant to Rule 91. The parties' stipulations are incorporated herein by reference and are found accordingly.

At the time the petition in the instant case was filed, petitioners resided in Hampton, New Hampshire.

During relevant periods, petitioner Leon Sicard (petitioner) was in the real estate development business and was involved in a number of partnerships.

Petitioner and Charles White formed the partnership on or about June 1, 1983. In general, petitioner and Mr. White formed the partnership to build the Seabury Condominiums (condominiums), a 54-unit condominium complex in Hampton, New Hampshire. All profits, losses, expenses, and liabilities of the partnership were to be shared equally by petitioner and Mr. White. At all

times, the partnership used the calendar year as its tax year and maintained its books and records and filed its Forms 1065, "U.S. Partnership Return of Income," under the accrual method of accounting.

Petitioner and Mr. White performed certain services prior to 1984 in order to determine whether it would be advantageous to pursue the partnership venture. In late 1983 or early 1984, petitioner and Mr. White orally agreed that the partnership would pay petitioner $5,000 per month (management fees) as compensation for providing various management services to the partnership (compensation arrangement). Petitioner and Mr. White settled on that amount because petitioner estimated his time was worth that based on what he had earned performing services on behalf of Palmer & Sicard, Inc., a plumbing and heating corporation which he had partly owned. The amount of the management fee was unaffected by the amount of partnership income. Petitioner and Mr. White also agreed to accrue to petitioner $5,000 per month for management services performed during the last seven months of 1983.

Petitioner and Mr. White also orally agreed that the partnership would pay White Enterprises, a corporation wholly owned by Mr. White, for various services it was to provide to the partnership, including architectural, construction, bookkeeping, and accounting services.

Petitioner and Mr. White further orally agreed that the partnership would pay both petitioner and White Enterprises approximately $1,000 per month for the partnership's use of equipment owned by each of them. The purpose of the foregoing arrangement was to ensure that each partner would be paid (directly or, in the case of Mr. White, indirectly) for services provided to the partnership. If, for some reason, the services were not provided, the partnership, if appropriate, would engage a nonpartner to perform them and the accruals for the services would cease.

Petitioner and Mr. White executed a written partnership agreement on March 1, 1984 (partnership agreement). With respect to the management of the partnership, paragraph 7 of the partnership agreement states:

> The management of the Partnership shall be conducted by all of the Partners, provided that no Partner shall obligate the Partnership to any third party for an amount in excess of Two Thousand Five Hundred ($2,500.00) Dollars, without the consent of all of the Partners. The Partners shall be entitled to such salary compensation for acting in the Partnership business, as shall be agreed to.

Construction of the condominiums commenced after petitioner and Mr. White entered into the partnership agreement. As soon as the partnership completed the first building, sales of individual units in that building, as well as of units to be built in the near future, commenced. The partnership completed construction of all of the condominiums by the end of 1986. The cost of the

entire project exceeded $3 million, with sales in excess of $6 million.

During the period that the management fees were accruing to him, petitioner performed various services for the partnership, consuming on average at least half of each work day. Petitioner provided management services to the partnership during the planning, construction, and sales phases of its operations. During the planning stage, petitioner met with attorneys to draw up condominium documents and attended planning board meetings in the town of Hampton, New Hampshire. Petitioner participated in many meetings with financial institutions in an attempt to raise the necessary financing for the project. He met numerous times with representatives of the bank from which financing for the project was ultimately obtained. Before construction commenced, petitioner negotiated with utility companies to obtain temporary service for construction, as well as permanent service to the completed units. As construction commenced, petitioner was involved in overseeing the project. Petitioner organized the workmen's (subcontractors') schedules, reviewed work performed, and approved bills for payment. He approved foundation locations, directed deliveries to correct buildings, and, generally, assured that the work that was contracted for had been completed in a satisfactory manner.

Following construction, petitioner initiated and oversaw the marketing and sales promotion effort for the condominiums, including on-site floor time. Since the complex was one of the

first condominium complexes in the New Hampshire seacoast area, petitioner educated real estate agents and potential buyers about the benefits of condominium ownership. As units were completed, petitioner was involved in negotiations with buyers regarding additional features to be put into the units and approval of the pricing structure of the features. Petitioner also arranged customer financing, and attended most of the closings with the buyers in order to handle any last-minute problems. Petitioner acted as the liaison with the buyers following the sales. He followed up to assure that all the features were completed to the buyer's satisfaction. He responded to buyers' complaints, and, when appropriate, called in subcontractors to redo work which they guaranteed. If necessary, he negotiated settlements with the buyers. The partnership sold most of the condominiums by early 1987. Petitioner did not provide significant management services to the partnership during 1987, and the partnership did not accrue any management fees to petitioner after 1986.

White Enterprises provided bookkeeping and accounting services to the partnership from 1984 through 1987 through its employee Darius (John) Davis. White Enterprises was compensated for the arrangement. Initially, Mr. Davis prepared either cash flow statements or income statements for the partnership approximately three times per year; subsequently, he prepared statements monthly. Once prepared, Mr. Davis sent copies of the statements to petitioner. The statements did not separately list

the management fees accruing to petitioner pursuant to the compensation arrangement.

During February 1984, Mr. White instructed Mr. Davis to prepare an invoice for the fees earned by petitioner and White Enterprises from June 1983 through February 1984 and thereafter to prepare invoices for these fees and to record the fees in the partnership's books and records on a monthly basis. From February 1984 through December 1986, Mr. Davis prepared an invoice each month for the fees owed to petitioner and White Enterprises. The fees earned by petitioner were recorded in the partnership's books and records as amounts payable and as management fees added to the cost of goods sold. The management fees that accrued to petitioner were capitalized into inventory each year by Mr. Davis and expensed as the inventory was sold.

The partnership's records reflect the following management fees that accrued to petitioner at the rate of $5,000 per month pursuant to the compensation arrangement:

| Year | Amount |
|------|--------|
| 1983 | $35,000 |
| 1984 | 60,000 |
| 1985 | 60,000 |
| 1986 | 60,000 |

From June through December 1983, the partnership accrued $5,000 per month to White Enterprises. From January 1984 through December 1986, the partnership accrued or paid between $9,000 to $10,000 per month in construction and other fees to White

Enterprises.  White Enterprises often drew on the accrued fees or was paid contemporaneously for the services it provided.

Prior to 1987, petitioner drew on the management fees accrued to him only twice.  On March 3, 1984, and April 23, 1984, respectively, petitioner caused the partnership to pay him accrued management fees in the amounts of $10,000 and $15,000. Because the partnership paid petitioner $25,000 in 1984, he was owed $190,000 in accrued management fees by the end of December 1986.

During 1987, the partnership paid petitioner the $190,000 outstanding balance of the management fees accrued pursuant to the compensation arrangement.  That sum was paid by five checks. The checks were deposited into petitioner's business checking account with Indian Head Bank and Trust Co.

During 1987 and 1988, believing that it was required, Mr. Davis and his assistant issued Forms 1099 to any noncorporate recipient of payments from the partnership in 1987 of at least $10 in interest or at least $600 for services.  During 1987, the partnership issued to petitioner two Forms 1099 for 1986:  A Form 1099 in the amount of $460 for automobile-related fringe benefits, and a Form 1099 in the amount of $12,000 for equipment rental fees paid to petitioner.  During 1988, the partnership issued to petitioner Forms 1099 for the years 1984 and 1985 on 1987 Forms 1099 with the year changed to 1984 or 1985, as appropriate.  The Form 1099 for 1984 in the amount of $42,201.79,

represents management fees in the amount of $25,000 and other income in the amount of $17,202. The other income included $6,400 of equipment rental fees which accrued in 1983, equipment rental fees earned in 1984, and miscellaneous reimbursements. The Form 1099 for 1985 was in the amount of $12,000, representing payment of equipment rental fees for that year. During 1988, the partnership issued to petitioner, and sent to the Internal Revenue Service, a 1987 Form 1099 reflecting $190,000 of nonemployee compensation.

The accrued management fees were not reported on Schedules K-1 "Partner's Share of Income, Credits, Deductions, etc.," as guaranteed payments to petitioner or otherwise reported to petitioner on IRS informational forms as taxable income during any of the years 1983 through 1986. The management fees accrued were not reported on a 1987 Schedule K-1 "Partner's Share of Income, Credits, Deductions, etc.," as guaranteed payments to petitioner. Scott Beane, the accountant who prepared the partnership's returns and Schedules K-1 for 1986 and 1987, did not treat the management fees as payments to petitioner because he assumed that they accrued to a corporation owned by petitioner and not to him personally. The partnership's books, however, indicate that the amounts accrued to petitioner accrued to him personally and not to an entity related to him. Neither petitioner nor Mr. White advised any of the persons who kept the partnership's books or prepared its tax returns that the

compensation arrangement for petitioner constituted anything other than nonemployee compensation. During 1990, Mr. Beane concluded that the management fees accrued to petitioner personally and that they constituted guaranteed payments. The partnership did not issue corrective Forms 1099 or Schedules K-1 concerning the $190,000 of management fees accrued and paid to petitioner in 1987 pursuant to the compensation arrangement.

Petitioner employs bookkeepers to keep track of his receipts and expenditures for purposes of computing his personal income taxes. The bookkeepers recorded petitioner's receipts and expenditures using a "one-write sheet" bookkeeping system. Receipts also were recorded on bank deposit slips. Petitioner's bookkeepers recorded all of petitioner's receipts and expenditures in a checkbook for petitioner's business checking account with Indian Head Bank and Trust Co. and assembled the information returns petitioner received from various entities, including the partnership. Deposits in petitioner's account with Indian Head Bank and Trust Co. entered as receipts in 1987 in petitioner's general ledger totaled $1,500,000. Amounts entered in petitioner's general ledger as receipts from the partnership in that year exceeded $190,000 because petitioner received other distributions from the partnership in addition to that amount.

During the years 1983 through 1987, petitioner deducted his expenses on Schedules C in the taxable year that they were paid. During the years 1983 through 1987, petitioner included all

income reported on his Schedules C in the taxable year that it was received.

During the years 1983 through 1987, petitioner reported as income on his Schedules C, in the year that the income was actually received, amounts paid to him from the partnership for equipment rentals and property he sold to the partnership.  On or about the date petitioner received it, petitioner's bookkeeper entered the $25,000 in management fees paid to petitioner in 1984 in petitioner's general ledger, as management fees received from the partnership, and petitioner reported the $25,000 as income on Schedule C of petitioners' Federal income tax return for 1984. With the exception of that $25,000, petitioner did not report as income the management fees accrued by the partnership during the years 1983 through 1986 on petitioners' Federal income tax returns for those years or on their 1987 return.  He did, however, report on his returns the other income reflected in the Forms 1099 issued to him during 1987 and 1988 by the partnership.

The management fees accruing pursuant to the compensation arrangement were not reflected in any of the records petitioner provided to his accountant, Clifford Abelson, for the purpose of preparing petitioners' 1983 through 1986 Federal income tax returns, and Mr. Abelson was unaware of the accruals during those years.  During 1988, during the preparation of petitioners' 1987 return, Mr. Abelson came across the Forms 1099 issued to

petitioner by the partnership during 1988, including the Form 1099 issued with respect to the $190,000 payment made by the partnership to petitioner during 1987. Mr. Abelson spoke with Mr. Beane concerning the matter, and, as result of their conversations, Mr. Abelson believed that (1) the payment represented the repayment of a loan by petitioner to the partnership, (2) the Form 1099 had been issued in error, and (3) the payment should not be reported as income to petitioner. Mr. Abelson did not ask petitioner whether he had loaned money to the partnership. Consequently, petitioner did not report the $190,000 he received from the partnership during 1987 as income during 1987 or any other year on petitioners' Federal income tax returns.

During the audit of petitioners' 1987 Federal income tax return, Mr. Abelson was asked by the examining agent for an explanation of, inter alia, the Form 1099 for $190,000. Mr. Abelson contacted Mr. Beane for information, and following some discussion and an exchange of letters, Mr. Abelson came to believe that the $190,000 represented management fees that had accrued to petitioner from 1983 through 1986.

At the time respondent issued the statutory notice of deficiency in the instant case, additional assessments of taxes for petitioners' 1983 through 1986 Federal income tax years were barred by the statute of limitations.

## OPINION

The principal issue presented for decision in the instant case is whether petitioners must include in their income for taxable year 1987 the $190,000 payment[1] petitioner received from the partnership during 1987. Petitioners bear the burden of proof. Rule 142(a).

Petitioners contend that the $190,000 payment represents a guaranteed payment that is includable in their income in the years that the partnership accrued the management fees payable to petitioner. The period of limitations on assessment has expired for the taxable years in which the accruals would have been reportable by petitioners. Respondent contends that, even assuming that the $190,000 payment represents a guaranteed payment, petitioner had adopted the cash method of accounting to report the payment, and, therefore, the payment is includable in petitioners' income in the year of receipt. We agree with petitioners.

For purposes of respondent's argument on brief, respondent assumes that the $190,000 payment constitutes a guaranteed payment and does not dispute petitioner's contention that it is a guaranteed payment. Although respondent has not expressly

---

[1] We sometimes refer to a $190,000 payment and sometimes to management fees. The term "190,000 payment" denotes the total of the accrual management fees that were paid to petitioner during 1987.

conceded that the payment constitutes a guaranteed payment,
because respondent did not raise any argument on brief as to the
nature of the payment, we consider the issue conceded.

Turning to the question of the time at which the $190,000
guaranteed payment is properly includable in petitioners' income,
we look to the provisions of section 706(a) and section 1.707-
1(c), Income Tax Regs.  Section 706(a) provides:

> (a) YEAR IN WHICH PARTNERSHIP INCOME IS
> INCLUDIBLE--In computing the taxable income of a
> partner for a taxable year, the inclusions required by
> section 702 and 707(c) with respect to a partnership
> shall be based on the income, gain, loss, deduction, or
> credit of the partnership for any taxable year of the
> partnership ending within or with the taxable year of
> the partner.

The relevant portion of section 1.707-1(c), Income Tax Regs.,
provides:

> (c) Guaranteed Payments.  Payments made by a
> partnership to a partner for services or for the use of
> capital are considered as made to a person who is not a
> partner, to the extent such payments are determined
> without regard to the income of the partnership.
> However, a partner must include such payments as
> ordinary income for his taxable year within or with
> which ends the partnership taxable year in which the
> partnership deducted such payments as paid or accrued
> under its method of accounting.  * * *

The tax accounting treatment of a guaranteed payment is
determined at the partnership level regardless of the partner's
method of accounting.  Pratt v. Commissioner, 64 T.C. 203, 212-
214 (1975) (and cases cited therein), affd. in part and revd. in
part on another issue 550 F.2d 1023 (5th Cir. 1977); Cagle v.

Commissioner, 63 T.C. 86, 95 (1974), affd. 539 F.2d 409 (5th Cir. 1976); S. Rept. 1622, 83d Cong., 2d Sess. 94, 385, 387 (1954). A guaranteed payment is includable in a partner's income in the partner's taxable year in which the payment's tax accounting treatment is determined at the partnership level. Cagle v. Commissioner, supra at 95.

On its books, the partnership accrued, on a monthly basis, petitioner's management fees as amounts payable and as management fees added to the cost of goods sold. The management fees accruing to petitioner were capitalized into the partnership's inventory of condominiums each year and reduced the gross receipts received by the partnership from the inventory's sale. Accordingly, pursuant to section 706(a) and section 1.707-1(c), Income Tax Regs., the management fees were includable in petitioners' income in the years that they were included in cost of goods sold by the partnership. Pratt v. Commissioner, supra at 212-214.

Consequently, we hold that the $190,000 guaranteed payment is not income to petitioner during 1987.

Respondent is concerned that petitioners will escape taxation on the $190,000 guaranteed payment received from the partnership during 1987 because the taxable years of petitioners in which the management fees were included in cost of goods sold by the partnership are now closed. Respondent seeks to avoid

that result by claiming that petitioner personally adopted a cash method of accounting for the fees. However, as discussed above, the tax accounting treatment of a guaranteed payment is determined at the partnership level, and a partner's method of accounting does not control the time at which a guaranteed payment is includable in the partner's income.[2] Pratt v. Commissioner, supra at 212-214. The partnership accounted for the management fees represented by the $190,000 guaranteed payment using an accrual method, and petitioner was required to include the fees in his income when they were included in cost of goods sold by the partnership based upon the partnership's method for reporting the fees. Moreover, even if petitioner had adopted a cash method of accounting for the fees, that method was specifically proscribed pursuant to section 706(a) and section 1.707-1(c), Income Tax Regs., and petitioner was entitled to abandon it without the Commissioner's consent. North Carolina Granite Corp. v. Commissioner, 43 T.C. 149, 168 (1964) and cases cited therein. As was stated in Thomson-King-Tate, Inc. v. United States, 296 F.2d 290, 294 (6th Cir. 1961):

---

[2] Although petitioners contend that respondent should not be allowed to rely on the accounting method argument because it was not timely raised, we need not consider the question because we reject the argument. We also do not address petitioners' argument that the management fees were constructively received by them in the years that they were accrued by the partnership.

If, under the statutes, income must be reported in a certain way and the taxpayer erroneously reports it in a different way, such treatment is not binding upon either the taxpayer or the Commissioner.  The taxpayer has made an error * * * which error, in the absence of estoppel, is subject to correction if timely challenged by either the taxpayer or Commissioner * * *.[3]

Respondent does not argue that petitioners are bound to report the $190,000 guaranteed payment in the year of receipt by the "duty of consistency" doctrine, nor is it contended that the mitigation provisions of sections 1311-1314 or the extended period of limitations provided by section 6501(c) and (e), are applicable.  Petitioners' mistaken omission of the management fees from their returns for the years in which they were included in cost of goods sold by the partnership does not prevent them from obtaining the benefit of the bar of the statute of limitations as applicable to the instant case.

---

3

   We note that generally it is held that, where a taxpayer erroneously omits income in a year with respect to which assessment is barred by the statute of limitations, the Commissioner may not require it to be included in income in a later year simply to prevent it from escaping tax.  United States v. Wilkins, 385 F.2d 465, 469 (4th Cir. 1967); Welp v. United States, 201 F.2d 128, 131-133 (8th Cir. 1953); Commissioner v. Frame, 195 F.2d 166, 167 (3d Cir. 1952) affg. 16 T.C. 600 (1951); Commissioner v. Mnookin's Estate, 184 F.2d 89, 92-93 (8th Cir. 1950) affg. 12 T.C. 744 (1949); Ross v. Commissioner, 169 F.2d 483, 492 (1st Cir. 1948), revg. and remanding a Memorandum Opinion of this Court dated Feb. 10, 1947; Fruehauf Trailer Co. v. Commissioner, 42 T.C. 83, 107 (1964), affd. 356 F.2d 975 (6th Cir. 1966).  "The courts hold that neither income nor deductions may be taken out of the proper accounting period for the benefit of the Government or the taxpayer."  Commissioner v. Mnookin's Estate, supra at 92.

Because we resolve the substantive issue in the instant case in favor of petitioners, they are not liable for respondent's determinations with respect to the additions to tax provided by sections 6653(a)(1) and 6661.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioners</u>.