In the Matter of the Tax Appeal of C. BREWER AND COMPANY, LIMITED, Taxpayer

NO. 7311

(TAX APPEAL CASE NO. 1793)

AUGUST 31, 1982

RICHARDSON, C.J., LUM, NAKAMURA, JJ., AND RETIRED JUSTICES OGATA AND MENOR, ASSIGNED TEMPORARILY

## OPINION OF THE COURT BY NAKAMURA, J.

C. Brewer & Company, Limited, a Hawaii corporation (Brewer or the taxpayer), appeals from a decision of the Tax Appeal Court sustaining the assessment of general excise taxes on the value of services it rendered on behalf of or furnished to wholly owned subsidiary corporations and the interest on funds borrowed and disbursed on their account. The taxpayer maintains the transactions in question were not within the purview of the general excise taxes imposed by HRS § 237-13, because they entailed neither the payment of consideration by the subsidiaries nor the reimbursement of the parent company. The vast net of excise taxation cast by the legislature nonetheless encompasses the value of the services rendered or supplied and the interest payments assumed, and we affirm the Decision, Order, and Judgment of the Tax Appeal Court.

### I.

During the relevant period, January 1, 1976 to December 31, 1976, Brewer was the sole stockholder of fourteen subsidiary corporations; it was also the parent of other subsidiary corporations where its stock ownership was substantial but less than 100%. The present controversy is centered on Brewer's practices of performing managerial and administrative functions, supplying professional and other services,[1] and borrowing money to disburse to or on behalf of

---

[1] The Stipulation of Facts submitted to the Tax Appeal Court characterizes the services performed and furnished in the following manner:

During the period in controversy, Brewer furnished and performed services to the Brewer affiliates and subsidiaries. In furnishing and performing such services, Brewer incurred certain overhead and administrative expenses, including

the wholly owned subsidiaries,[2] although functions and services were performed for and furnished to less than wholly owned subsidiaries too. The tasks assumed by the parent covered the training of personnel, data processing, materials and budgetary control, accounting, engineering, industrial relations, and purchasing. Services procured at the parent's expense included auditing, legal services, and consultant services. *See* note 1 *supra*.

Where the administrative and managerial functions and services were rendered or supplied to the less than wholly owned companies, Brewer charged all of the expenses incurred to the subsidiary involved,[3] and there is no dispute related thereto. The taxpayer acknowledged that the transactions were subject to taxation by reporting their value as taxable gross income. But where the expenses, including interest payments on funds borrowed and disbursed, were incurred on account of wholly owned companies, Brewer neither charged the subsidiaries for such services nor sought the reimbursement of the expenses.[4] Brewer treated all of the foregoing

auditing fees, legal fees, contributions, management consultants' fees, transfer agents' fees, fees for other professional services, and expenses for training, data processing, materials control, accounting, budgetary control, engineering, industrial and employee relations, land matters and purchasing. The expenses mentioned in this paragraph 7 are hereinafter referred to collectively as the "overhead and administrative expenses".

[2] Paragraph 17 of the Stipulation of Facts reads as follows:
    During the period in controversy and in addition to the payment of the overhead and administrative expenses, Brewer disbursed funds from time to time to or on behalf of the Brewer affiliates [wholly owned companies]. In order to make such disbursements, Brewer borrowed funds from outside lenders. Such disbursements are hereinafter referred to as the "disbursements".

[3] Paragraph 16 of the Stipulation of Facts states:
    Brewer charged the Brewer subsidiaries [less than wholly owned companies] for the expenses . . . and the Brewer subsidiaries reimbursed Brewer for such expenses. Brewer did not contribute such expenses to the capital of the Brewer subsidiaries.

[4] Paragraph 9 of the Stipulation of Facts reads:
    Brewer did not charge the Brewer affiliates [wholly owned companies] for the overhead and administrative expenses, and did not receive any payment or reimbursement or consideration for such expenses. The Brewer affiliates did not reimburse Brewer for, or pay Brewer any consideration for, such expenses. Brewer did not recover such expenses from the Brewer affiliates.
And Paragraph 20 reads:
    Brewer did not charge, collect, receive, recover or accrue interest or any other

expenses, including the interest liability it assumed, as contributions to the capital of the wholly owned subsidiaries.[5] And the value of the services and the interest was not reported as gross income.

The Director of Taxation (the Director) determined that the tax liability on the unreported gross income amounted to $237,869.93; the assessment also included interest amounting to $19,290.60. The taxpayer paid the assessed taxes and interest and appealed to the Tax Appeal Court, which affirmed the Director's determination.

## II.

"In enacting . . . [the general excise tax], the legislature cast a wide and tight net." *In re Tax Appeal of Island Holidays, Ltd.*, 59 Haw. 307, 316, 582 P.2d 703, 708, *reh'g denied,* 59 Haw. 408, 582 P.2d 709 (1978). The tax is "imposed upon entrepreneurs for the privilege of doing business," and "applies at all levels of economic activity . . . and to virtually all goods and services." *In re Tax Appeal of Central Union Church,* 63 Haw. 199, 202, 624 P.2d 1346, 1349 (1981). It is levied upon them "on account of their business and other activities in the State measured by the application of [prescribed] rates against values of products, gross proceeds of sales, or gross income, whichever is specified." HRS § 237-13.

"Read as a whole, . . . [HRS Chapter 237] subjects to the general

consideration from the Brewer affiliates for or with respect to the disbursements. The Brewer affiliates did not reimburse or pay interest or any other consideration to Brewer for or with respect to the disbursements.

[5] Paragraphs 11 and 12 of the Stipulation of Facts respectively read:
In the books of account and accounting records of the Brewer affiliates, the amounts of the overhead and administrative expenses were reflected as contributions to the capital of the various Brewer affiliates. Such amounts were credited to the paid-in capital accounts of the various Brewer affiliates, and the corresponding debits were to the expense accounts of the various Brewer affiliates.

Brewer, as the sole stockholder of each of the Brewer affiliates, made the decision to contribute the overhead and administrative expenses to the capital of the various Brewer affiliates. Brewer also determined the specific amounts of overhead and administrative expenses to be contributed by it to the capital of each of the Brewer affiliates.
And Paragraph 21 reads in relevant part as follows:
Brewer's purpose with respect to the disbursements was to contribute to the capital of the Brewer affiliates the value of the use of the funds so disbursed, and such value was contributed to the capital of the Brewer affiliates.

excise tax virtually every economic activity imaginable." *Pratt v. Kondo*, 53 Haw. 435, 436, 496 P.2d 1, 2 (1972). HRS § 237-13(1)-(9) delineates persons engaged in nine specific categories of businesses or activities to whom the tax applies. Under the rubric of "[t]ax on other business", HRS § 237-13(10) provides a catch-all for those not otherwise covered; it reads in pertinent part:

> Upon every person engaging or continuing within the State in any business, trade, activity, occupation, or calling not included in the preceding paragraphs or any other provisions of this chapter, there is likewise hereby levied and shall be assessed and collected, a tax equal to four percent of the gross income thereof.

And it matters not whether the business is conducted between related or unrelated persons or entities. *In re Tax Appeal of Island Holidays, Inc., supra.* "A person or company having shareholders or members (a corporation, association, group, trust, partnership, joint adventure, or other person) is taxable upon its business with them, and they are taxable upon their business with it." HRS § 237-20.

A legislative design to reach virtually all transactions with economic gain or benefit as the object may also be observed in HRS § 237-2, reading:

> "Business" as used in this chapter, includes all activities (personal, professional, or corporate), engaged in or caused to be engaged in with the object of gain or economic benefit either direct or indirect, but does not include casual sales.
>
> The term "engaging" as used in this chapter with reference to engaging or continuing in business also includes the exercise of corporate or franchise powers.

The receipts subject to taxation are likewise described in expansive terms. "Gross income" taxable under HRS § 237-13 comprehends

> the gross receipts, cash or accrued, of the taxpayer received as compensation for personal services and the gross receipts of the taxpayer derived from trade, business, commerce, or sales and the value proceeding or accruing from the sale of tangible personal property, or service, or both, and all receipts, actual or accrued as hereinafter provided, by reason of the investment of the capital of the business engaged in, including interest, discount, rentals, royalties, fees, or other emoluments however designated and without any deductions on account of the cost of

property sold, the cost of materials used, labor cost, taxes, royalties, interest, or discount paid or any other expenses whatsoever. HRS § 237-3.

The statute thus "renders taxable, with only the exclusions and exemptions provided by the statute, all receipts by reason of the investment of the capital of the business engaged in." *In re Tax Appeal of Island Holidays, Inc., supra,* 59 Haw. at 316, 582 P.2d at 708.

### III.

Brewer nevertheless asserts the rendering and furnishing of services and the disbursements on behalf of its wholly owned companies were beyond the scope of HRS Chapter 237. Characterizing the activities in question as gratuitous transactions, it argues nothing in the law compels a corporation to charge its subsidiaries for the expenses related thereto. In our opinion, the transactions were still within the bounds of the statute.

Brewer does not claim the gross income taxed by the Director fell within any of the exclusions and exemptions provided in the statute. But it contends that where "no actual gross income is received for services, the tax does not apply" and there is no statutory basis "to impute hypothetical gross receipts for gratuitous services." The taxpayer further avers there is "no authority permitting the imputation of hypothetical interest on gratuitous disbursements." Proceeding on the basis that HRS §§ 237-2 and 237-13(10) manifest a legislative purpose "to tax every form of business, subject to the taxing jurisdiction, not specifically exempted," the Director found Brewer engaged in taxable activities by providing services and disbursing borrowed funds for the subsidiaries. Like the Director, we encounter no difficulty in reaching a conclusion that the services and disbursements were far from gratuitous and the receipts were more than hypothetical.

The expenses related to the services and disbursements were incurred for the economic benefit of parent and subsidiaries, all of whom are organized for business purposes. That transactions of this nature ordinarily result in taxable gross income is acknowledged by the taxpayer, for the receipts from like transactions involving its less than wholly owned subsidiaries were reported as gross income. But Brewer's thesis here is that it neither sought nor received any com-

pensation, reimbursement, or other consideration from the wholly owned subsidiaries and no income was accrued in its books and records with respect to the transactions involving them.

No income, of course, was recorded in Brewer's books and records; it chose not to record the transactions in a form that would reflect the receipts therefrom as gross income. Though it may be axiomatic that a taxpayer can order its affairs in any manner not proscribed by law to minimize the impact of taxation, the Director is by no means bound by its accounting practices, *Malco, Inc. v. Commonwealth*, 568 S.W.2d 755, 757 (Ky. App. 1978). It is also fundamental that he can look at the substance rather than the form of a transaction in fixing tax liability. *In re Tax Appeal of Hawaiian Telephone Co.*, 57 Haw. 477, 488, 559 P.2d 283, 290 (1977); *In re Tax Appeal of Ulupalakua Ranch, Inc.*, 52 Haw. 557, 560, 481 P.2d 612, 614 (1971). "Actualities and consequences of a commercial transaction, rather than the method employed in doing business, are controlling factors in determining such liability." *In re Kobayashi*, 44 Haw. 584, 590, 358 P.2d 539, 543 (1961).

The consequences of the pertinent transactions were registered as contributions to the capital of the wholly owned subsidiaries.[6] Granted, there also were no actual payments of cash or its equivalent. Yet, the actualities were that Brewer was the recipient of gross income. For the relevant term includes "gross receipts, cash or accrued . . . received as compensation for . . . services and . . . gross receipts . . . derived from . . . business . . . and the value proceeding or accruing from . . . service . . . and all receipts, actual or accrued . . . by reason of the investment of . . . capital." HRS § 237-3.

Brewer acquired enforceable rights by providing services and meeting interest payments on behalf of subsidiary corporations. It enforced its rights against the less than wholly owned companies in the customary manner; it elected not to follow the same course of action where the wholly owned were concerned. That the subsidiaries' obligations were not satisfied through the actual payment

---

[6] The Stipulation of Facts indicates this was accomplished through bookkeeping entries that commenced with debits against Brewer's overhead and administrative expense account and credits to its cash/accounts payable account and ended with debits against the subsidiaries' expense accounts and credits to their paid-in-capital accounts.

of money or its equivalent is of no consequence for purposes of excise taxation. What is significant is that there was "value proceeding or accruing" from the activities, value reflected in additions to the paid-in-capital accounts of Brewer's wholly owned companies.

Affirmed.

*Jack Spradlin* for taxpayer-appellant.

*T. Bruce Honda*, Deputy Attorney General, for appellee Director of Taxation.