260

In the Matter of the Tax Appeal of TRADE WIND TOURS OF HAWAII, INC., Taxpayer

NO. 10762

(TAX APPEAL CASE NO. 2127)

APRIL 22, 1986

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

The tax appeal court upheld the assessment of general excise taxes against Trade Wind Tours of Hawaii, Inc. (Taxpayer) on the value of management and administrative services it furnished to its wholly owned subsidiary corporations. Taxpayer appeals claiming that (1) procedural errors were committed at the administrative level and in the court below and (2) the transactions involved are not taxable under the general excise law, Hawaii Revised Statutes (HRS) Chapter 237. We find no procedural errors and hold that *In re C. Brewer & Co., Ltd.,* 65 Haw. 240, 649 P.2d 1155 (1982), compels our affirmance of the judgment below.

Taxpayer, a Hawaii corporation, has been in the tour and travel business for over 30 years. During most of this period Taxpayer operated as a single entity with several departments. In 1977, Taxpayer incorporated the departments into wholly owned subsidiary corporations. It continued to provide the newly created subsidiaries with management and administrative services. In so doing, Taxpayer incurred certain overhead and administrative expenses. There was no express agreement between Taxpayer and the subsidiaries for repayment or reimbursement of these expenses. No cash payments were ever transferred from the subsidiaries to Taxpayer for the services rendered.

For the tax years 1977 and 1978, in its consolidated corporate income tax returns, in the gross income category of "Other Income," Taxpayer reported the overhead and administrative expenses incurred for the subsidiaries as "Unrecorded Management Fees." For tax years 1979 through 1981, Taxpayer changed the above designation and reported the incurred expenses as a deduction labeled "Overhead Expenses Allocated."

The Director of Taxation (Director) determined that the items identified as "Unrecorded Management Fees" and "Overhead Expenses Allocated" were subject to the general excise tax. Taxpayer paid the assessed taxes of $75,869.34 plus interest of $20,838.60 and appealed to the tax appeal court, which affirmed the Director's assessments.

## I. PROCEDURAL OBJECTIONS

We will initially deal with Taxpayer's procedural objections. Taxpayer argues that (1) the notices of assessment issued by the Director violated HRS Chapter 91, Hawaii Administrative Procedure Act (HAPA), because they were not accompanied by "separate findings of fact and conclusions of law" as required by HRS § 91-12 (1976)[1] and (2) the tax appeal court erred in not deeming the matters set forth in Taxpayer's "Request for Admissions" as admitted since the Director had failed to answer or object within 30 days as required by Rule 36(a), Hawaii Rules of Civil Procedure (HRCP) (1981). These arguments have no merit.

### A. *Taxpayer's HAPA Claim*

The notices of assessment for tax years 1977 and 1978 merely explained that "[m]anagement fees to subsidiaries are subject to General Excise tax," and those for 1979 through 1981 stated that "[a]llocation of overhead costs to subsidiaries is subject to the General Excise tax." Taxpayer claims that due process required that "the Director fully inform the taxpayer of the reasons at the time of assessment" and that the notices of assessment in this case were "unfairly uninformative" in violation of HRS § 91-12.[2]

However, HRS § 91-12 which requires separate findings of fact and conclusions of law is applicable only with respect to an agency decision in a "contested case." HRS § 91-1(5) (1976) defines a "contested case" as "a proceeding in which the legal rights, duties, or privileges of specific parties *are required by law to be determined after an opportunity for agency hearing.*" (Emphasis added.)

---

[1]In November 1983 when the notices of assessment were issued, Hawaii Revised Statutes (HRS) § 91-12 (1976) read in pertinent part as follows:

Decisions and orders. Every decision and order adverse to a party to the proceeding, rendered by an agency in a contested case, shall be in writing or stated in the record and shall be accompanied by separate findings of fact and conclusions of law . . . .

[2]The record discloses that Taxpayer had full knowledge as to the basis for the assessments prior to the time the notices were mailed. Taxpayer's representatives fully discussed the matter with the audit staff of the Department of Taxation.

We review, therefore, the provisions of HRS § 237-36 (1976) governing assessments to determine whether the Director was required to afford Taxpayer "an opportunity for agency hearing" before assessing the general excise taxes in question. *Sharma v. State,* 66 Haw. 632, 639, 673 P.2d 1030, 1035 (1983). *See also Miller v. Department of Transportation,* 3 Haw. App. 91, 641 P.2d 991 (1982). We find no requirement of a hearing in HRS § 237-36.

We must now determine whether procedural due process mandated an agency hearing. *See Miller v. Department of Transportation, supra.* A judicial hearing or trial de novo " can take the place of administrative hearing which may be required by due process." B. Schwartz, *Administrative Law,* § 5.9 at 221-22 (2d ed. 1984). *See also* K. Davis, *Administrative Law Treatise* § 12.13 (2d ed. 1979). Such a hearing "satisfies the requirements of due process." *Ewing v. Mytinger & Casselberry, Inc.,* 339 U.S. 594, 598, 70 S. Ct. 870, 872, 94 L. Ed. 1088, 1093 (1950). *See also Lichter v. United States,* 334 U.S. 742, 68 S. Ct. 1294, 92 L. Ed. 1694 (1948).

Under HRS § 237-42 (1976), any aggrieved person may appeal a general excise tax assessment "as provided in the case of income tax appeals by section 235-114[.]" HRS § 235-114 (1976), in turn, provides for an appeal either to the district board of review or to the tax appeal court. An aggrieved taxpayer who appeals to a board of review and loses may then appeal the board's decision to the tax appeal court. *See* HRS § 232-17 (1976). HRS § 232-13 (1976) specifies that "[t]he hearing before the tax appeal court shall be a hearing de novo[,]" wherein "[e]ach party shall have the right to introduce . . . such evidence . . . as in the court's discretion may be deemed proper." Here, Taxpayer appealed directly to the tax appeal court and had a hearing de novo.

Since neither the statute nor procedural due process required an agency hearing before the Director issued the notices of general excise tax assessment, the proceeding was not a "contested case." Consequently, HAPA did not require the Director to issue findings of fact and conclusions of law to accompany those notices.

### B. *The Director's Untimely Response to Taxpayer's Request for Admissions*

The record reveals that Taxpayer's "Request for Admissions" dated July 12, 1984, showing an acknowledgment of receipt by the Director's

counsel on July 13, 1984, was filed on October 29, 1984.[3] The Director's "Answers to Request for Admissions under Rule 36" was served and filed on December 12, 1984. Taxpayer contends that because the Director's answers were untimely,[4] the tax appeal court erred in failing to treat the matters requested as admitted by the Director. We hold that the court did not abuse its discretion in deeming the Director's admissions to have been withdrawn upon the filing of the answers.[5]

In their analysis of Rule 36, Professors Wright and Miller state:

> The court has power to allow additional time for a response to a request for admissions even after the time fixed by the rule has expired. Thus the court can, in its discretion, permit what would otherwise be an untimely answer.

8 C. Wright and A. Miller, Federal Practice and Procedure: *Civil* § 2257 at 719 (1970) (footnote omitted). *See also Gutting v. Falstaff Brewing Corp.*, 710 F.2d 1309 (8th Cir. 1983); *French v. United States*, 416 F.2d 1149 (9th Cir. 1968).

In effect, "[t]o allow a late filing of answers is the equivalent of allowing a party to withdraw admissions made by operation of Rule 36(a)." *Pleasant Hill Bank v. United States*, 60 F.R.D. 1, 3 (W.D. Mo. 1973). *See* Finman, *The Request for Admissions in Federal Civil Procedure*, 71 Yale L.J. 371, 432-33 (1962). The applicable standard in determining whether a party should be allowed to withdraw admissions is set forth in

---

[3]The "Request for Admissions" was made pursuant to Rule 36, Hawaii Rules of Civil Procedure (HRCP) (1981). Rule 29, Rules of the Tax Appeal Court (1981) provides:

> In procedural matters not specifically provided for by the foregoing rules, the court will be guided, to the extent applicable, by the Rules of the Circuit Courts of the State of Hawaii, and the Hawaii Rules of Civil Procedure.

The record does not indicate why the "Request for Admissions" was filed more than three months after service.

[4]Rule 36(a), HRCP, provides in relevant part:

> The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by his attorney, . . . .

[5]Taxpayer raised the issue of an untimely answer to its request for admissions on the first day of the hearing when it sought to introduce the "Request for Admissions" into evidence as the Director's admissions. The court took the matter under advisement but never ruled on the issue. However, the court's findings of fact and conclusions of law clearly indicate that the court did not consider the matters in Taxpayer's request to have been admitted by the Director.

Rule 36(b), HRCP, as follows:

[T]he court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits.

See Pleasant Hill Bank, supra; 8 C. Wright and A. Miller, supra, § 2257 at 719-20.

We find no abuse of discretion in the tax appeal court's implied allowance of the Director's withdrawal of his admission. First, the withdrawal "subserved" the presentation of the merits of the action. The key issue in the case was whether Taxpayer received "gross income" by voluntarily providing services to its subsidiaries. Paragraphs 1 and 9 of the "Request for Admissions" cover this issue:

1. During the period 1977 through 1981, [Taxpayer] did not receive any gross income from any of its subsidiaries.

\* \* \*

9. Under generally accepted accounting standards, consistently applied, [Taxpayer] did not receive any gross income from any of its subsidiaries during the period 1979-1981.

In his answers the Director "denie[d] the truth of the matters set forth in the Request." If the Director was not permitted to withdraw his admission and file his untimely answers, the fact of Taxpayer not receiving gross income would stand admitted. "This would produce an 'unjustified suppression of the merits,' a result which we find unacceptable." Pleasant Hill Bank, 60 F.R.D. at 4.

Second, withdrawal of the admission would have been an abuse of discretion if Taxpayer was prejudiced. In this context, "prejudice" means "prejudice stemming from reliance on the binding effect of the admission." 8 C. Wright and A. Miller, supra, § 2264 at 745 (footnote omitted). In other words, it "'relates to the difficulty a party may face in proving its case' because of the sudden need to obtain evidence required to prove the matter that had been admitted." Gutting v. Falstaff Brewing Corp., 710 F.2d at 1314 (quoting Brook Village North Associates v. General Electric Co., 686 F.2d 66, 70 (1st Cir. 1982)).

Our review of the record, however, indicates Taxpayer suffered no prejudice. On November 27, 1984, after the Rule 36(a) 30-day period had expired, Taxpayer took the deposition of Norman K. Hiroshige, tax

auditor with the Department of Taxation, and the deposition was admitted into evidence at the hearing. Taxpayer readily had six witnesses, including an expert witness, who testified at the hearing. Nothing in the record indicates that Taxpayer faced difficulty "in proving its case because of the sudden need to obtain evidence required to prove the matter that had been admitted." Taxpayer did not seek a continuance to obtain evidence. Rather, Taxpayer, from the beginning of the hearing, presented its case as if the Director had not admitted the matters in its "Request for Admissions."

Thus, Taxpayer's claim of error based on Rule 36, HRCP, cannot be sustained.

## II. TAXABILITY UNDER HRS CHAPTER 237

The Director asserts that the principles set forth in *In re C. Brewer & Co., Ltd.,* 65 Haw. 240, 649 P.2d 1155 (1982), are controlling and, consequently, the assessments were proper. Taxpayer contends, however, that substantial factual differences render *Brewer* inapplicable. We agree with the Director.

In *Brewer* the parent corporation incurred expenses in performing and furnishing managerial functions and administrative services to both its wholly owned subsidiary corporations and "less than wholly owned" subsidiaries. The parent charged the latter subsidiaries for the expenses incurred and reported their value as taxable gross income, but did not charge the former for nor receive from them "any payment or reimbursement or consideration for such expenses." *Id.* 65 Haw. at 242, n.4, 649 P.2d at 1157, n.4. However, in the books and accounting records of the wholly owned subsidiaries, the amounts of those expenses "were credited to the paid-in capital accounts . . . and the corresponding debits were to the expense accounts[.]" *Id.* 65 Haw. at 243, n.5, 649 P.2d at 1157, n.5. The supreme court held the value of the expenses incurred for the wholly owned subsidiaries taxable to the parent under HRS Chapter 237.

Taxpayer asserts that (1) "the very complex and involved network of wholly and partly owned subsidiaries" and (2) "the payment by credits to paid-in-capital" of the wholly owned subsidiaries, which are absent in this case, were the "essence" of *Brewer*. Taxpayer claims therefore that its situation is not comparable to the parent in *Brewer* and *Brewer's* principles are inapplicable. We view those differences to be inconse-

quential.

We do not believe a contrary decision would have resulted in *Brewer* if "less than wholly owned" subsidiaries had not been involved and the parent had rendered services only to its wholly owned subsidiaries. The rendition of those services by the parent to only the wholly owned subsidiaries would have been deemed "engaging in business" within the purview of HRS § 237-2 (1976). The opinion in *Brewer* supports this view.

There, the supreme court pronounced that the general excise tax "is 'imposed upon entrepreneurs for the privilege of doing business,' and 'applies at all levels of economic activity . . . and to virtually all goods and services.'" *Brewer,* 65 Haw. at 243, 649 P.2d at 1157 (quoting *In re Tax Appeal of Central Union Church,* 63 Haw. 199, 202, 624 P.2d 1346, 1349 (1981)). It quoted *Pratt v. Kondo,* 53 Haw. 435, 436, 496 P.2d 1, 2 (1972), to the effect that the statute "'subjects to the general excise tax virtually every economic activity imaginable.'" *Id.* 65 Haw. at 243-44, 649 P.2d at 1157. It stated that the "legislative design [is] to reach virtually all transactions with economic gain or benefit" and under the statute "it matters not whether the business is conducted between related or unrelated persons or entities." *Id.* 65 Haw. at 244, 649 P.2d at 1157. These precepts embrace Taxpayer's activities with its corporate subsidiaries involved in this case.

We do not envision a holding of nontaxability in *Brewer* if the value of the overhead and administrative expenses had not been credited to the paid-in capital accounts of the subsidiaries. This view is supported by our reading of the opinion.

The *Brewer* court stressed the following facts.

First, the expenses "were incurred for the economic benefit of parent and subsidiaries, all of whom are organized for business purposes." 65 Haw. at 245, 649 P.2d at 1158.

Second, the Director is not bound by the parent's "accounting practices" and "can look at the substance rather than the form of a transaction in fixing tax liability." 65 Haw. at 246, 649 P.2d at 1159.

Third, the parent "acquired enforceable rights by providing services" to the subsidiaries. *Id.*

Fourth, "there was 'value proceeding or accruing' from the activities[.]" 65 Haw. at 247, 649 P.2d at 1159.

All of the foregoing factors extant in *Brewer* are present in this case. Unlike in *Brewer,* however, the "value proceeding or accruing" from the

activities was not reflected in the paid-in capital accounts of Taxpayer's subsidiaries. However, the "actualities" and "consequences" of the transactions here are that the values should be reflected as increases in Taxpayer's assets as revenues and in the subsidiaries' liabilities as expenses. Moreover, Taxpayer acquired enforceable rights to collect payments from, or credit the paid-in capital accounts of, the subsidiaries.

Accordingly, the tax appeal court properly sustained the Director's assessments.

Affirmed.

*Arthur B. Reinwald* (*Ronald I. Heller* with him on the briefs; *Hoddick, Reinwald, O'Connor & Marrack,* of counsel) for taxpayer-appellant.

*T. Bruce Honda,* Deputy Attorney General, for appellee Director of Taxation.