Opinion of the Court by
LIM, J.
Appellant Wasson-Bendon Partners (Taxpayer) appeals the adverse November 18, 1998 Judgment of the tax appeal court, in favor of Appellee Ray K. Kamikawa, Director of Taxation, State of Hawai'i (the State), and the court’s March 23, 1999 Order Denying Taxpayer’s Rule 52(b) Motion to Amend Findings and Make Additional Findings and Amend Judgment.
We affirm because Taxpayer’s provision of medical equipment and ancillary services to its joint venture constituted “business” made subject to the general excise tax by Hawai'i Revised Statutes (HRS) § 237-20.
I.Background.
The parties do not dispute the tax appeal court’s findings of fact.
Taxpayer appeals only the court’s conclusions of law enumerated 11,12,13,14 and 15.
The tax appeal court found and concluded as follows:

FINDINGS OF FACT

1. On January 28, 1998, [Taxpayer] paid under protest the amount of $20,-596.59 assessed for 1990, and filed this appeal for the calendar tax year 1990, pursuant to [HRS § ] 237-42.
2. The question presented is whether [Taxpayer’s] income from [its] business activity of providing medical equipment was subject to the General Excise Tax (“GET”) under [HRS] § 237-13(10) or whether the income was [an] excise tax-exempt distribution.
3. [Taxpayer] was a Hawaii general partnership duly registered with the State of Hawaii, Department of Commerce and Consumer Affairs, Business Registration Division (“DCCA”) on October 1,1982.
4. The partners of [Taxpayer] were Eugene C. Wasson III[,] M.D. and James A. Bendon, M.D.
5. [Taxpayer] duly registered the tradename, “Imaging Associates” with the DCCA on January 6,1983.
6. The stated purpose of Imaging Associates was “[T]he purchase and ownership of medical equipment to be employed in the practice of medicine as a joint venture.”
7. Maui Radiology Consultants (“MRC”) is a Hawaii general partnership, registered with the State of Hawaii, Department of Regulatory Agencies, Business Registration Division on June 1,1981.
8. The initial partners in MRC were Eugene C. Wasson III, M.D., Inc., a Hawaii professional eorporation[,] and James A. Bendon, M.D., Inc., a Hawaii professional corporation.
9. All of the [issued] and outstanding stock of Eugene C. Wasson III[,] M.D., Inc. is owned by Eugene C. Wasson III, who at all times relevant to this appeal, served as the president and sole director of that professional corporation.
10. All of the issued and outstanding stock of James A. Bendon, M.D., Inc. is owned by James A. Bendon[,] who, at all times relevant to this tax appeal, served as president and sole director of that professional corporation.
11. The stated purpose of MRC was “to provide high quality medical imaging services to the residents and visitors of the island of Maui.”
12. Since 1980, MRC has provided medical imaging services to Maui Memorial Hospital (“MMH”) through a contract with the Department of Health. Under these contracts, MRC has: rented space at MMH, provided radiology or imaging equipment [and] technicians to operate the equipment, serviced and maintained the equipment, and billed patients and insurers directly for the services.
13. MRC supplied the equipment required by [its] contracts by commitments through a leasing arrangement, first with Drs. Wasson and Bendon as individuals^] and then, beginning in October of 1982, with Imaging Associates^] to acquire, service and maintain the equipment.
14. Effective October 1, 1982, upon the advice of [its] tax attorney, MRC amended its Joint Venture Agreement to admit Im *270 aging Associates as a Non-Physician Joint Venturer. As [its] contribution to the joint venture, Imaging Associates provided certain radiological equipment to MRC and received guaranteed payments of specified amounts. Pursuant to the amended Joint Venture Agreement, Imaging Associates established a capital account in the joint venture of $1.
15. It is evident that one of the reasons Drs. Wasson and Bendon formed the Was-son-Bendon partnership was to avoid the excise tax that would have been incurred if they simply had leased equipment to MRC instead of becoming a partner in MRC.
16. From 1980-1994, Taxpayer’s acquisition cost for equipment, the use of which it contributed to MRC, was approximately $3,110,700.00
17. For fiscal years ending June 30, 1983 and June 30, 1984, both the federal and state income tax returns for MRC properly named Imaging Associates as a partner and identified all distributions made pursuant to the Joint Venture Agreement as partnership distributions.
18. The MRC Joint Venture Agreement was amended again effective April 1, 1984. The following language was inserted: “The payment to Imaging Associates shall abate to the extent that the payments exceed joint venture net income.”
19. On October 9, 1984, [the State], prepared two Notices of Proposed Assessment of Additional General Excise Taxes for calendar year[s] 1982 and 1983. These notices were based on [the State’s] conclusion that MRC’s payments to Imaging Associates constituted equipment rental subject to the State of Hawaii General Equipment Tax.
20. Taxpayer filed a Tax Appeal, Case No. 2239, [on] October 26, 1984. On or around January 4, 1985, [T]axpayer presented a settlement proposal to the Deputy Attorney General representing [the State], T. Bruce Honda. The settlement was never accepted.
21. Since April 1, 1984, the Amended Joint Venture Agreement, as amended from time to time, provided that: 1) MRC would pay [T]axpayer solely from net profits of MRC; 2) Taxpayer’s profit share would accrue and be distributed before any other partner’s share; and 3) these distributions would abate to the extent that the Joint Venture’s profits were insufficient.
22. In March through May, 1985, the parties fully briefed the 1982-1983 Tax Appeal. No decision was ever issued by the Tax Court, and the case was ultimately dismissed for lack of prosecution in 1997.
23. For tax year 1990, [T]axpayer filed GET returns reporting no excise taxes due.
24. MRC was profitable each of the years from 1984-1994 and always had enough to pay [T]axpayer its budgeted share of profit.
25. MRC was governed by a Governing Board. The Governing Board consisted of the directors of the physician partners. Thus, it included Drs. Wasson and Bendon, the only partners in [T]axpayer.
26. [Taxpayer] dissolved in 1994 and has ceased doing business.

CONCLUSIONS OF LAW

1. Generally, exemptions from taxation are construed strictly against the taxpayer. [HRS] Chapter 237 subjects to the general excise tax virtually every economic activity imaginable. In re C. Brewer & Co., Ltd., 65 Haw. 240, 243[, 649 P.2d 1155] (1982)[.]
2. The central issues in this appeal [are] whether [T]axpayer was a partner in MRC and whether the payments it received from MRC were partnership distributions or some other transaction that would be subject to the excise tax.
3. The pertinent statutory provisions considered by the Court were:
A partnership is defined as an association (including a joint venture) of two or more persons to carry on as co-owners a business for profit. [HRS] § 425-106(1).
In determining whether a partnership exists, these rules shall apply:
[....]
(4) The receipt by a person of a share of profits of a business is prima facie evidence that the person is a partner in the *271 business, but no such inference shall be drawn if such profits were received in payment:
(a) As a debt by installments or otherwise,
(b) As wages of an employee or rent to a landlord,
(c) As an annuity to a widow or representative of a deceased partner,
(d) As interest on a loan, though the amount of payment vary with the profits of the business,
(e) As consideration for the sale of a goodwill of a business or other property by installments or otherwise. [HRS] § 425-107.
A person or company having shareholders or members (a corporation, association, group, trust, partnership, joint adventure, or other person) is taxable upon [its] business with them and they are taxable upon their business with it. [HRS] § 237-20.
4. The Court finds that the requisite elements exist to find that [Taxpayer] was indeed a partner in the MRC partnership.
5. “Whether an agreement creates a partnership or not depends upon the intention of the parties.” Dang v. F and S Land Dev. Corp., 62 Haw. 583, 589, [618 P.2d 276] (1980). Although, as originally drafted, the partnership agreement was deficient so as not to qualify payments to [T]axpayer as excise tax-exempt, the original agreement and testimony of the witnesses presented by [T]axpayer show the requisite intent to create a partnership. The signed MRC partnership agreement predates the 1984 excise tax assessment by [the State].
6. “A joint venture is a mutual undertaking by two or more persons to carry out a single business enterprise for profit.” [In re O.W. Limited Partnership], 4 Haw. App. 487, 494, [668 P.2d 56] (1983). The Taxpayer’s evidence shows a mutual undertaking with a sharing of profits. This constitutes prima facie evidence that it was a partner in MRC. [HRS] § 425-107.
7. Parties to a Q]oint venture may agree[ ] that only some members will bear the burden of losses while all share in profits. Shinn v. Yee, 57 Haw. 215, 553 P.2d 733 (1976). While HRS § 425-118(a) provides a model for sharing of partnership losses, this model may be modified by agreement between the partners. Thus[,] no showing of loss sharing is required by [T]axpayer to prove the existence of a partnership!;] rather it is the sharing of profits that is of primary importance. HRS § 425-106.
8. Taxpayer also has demonstrated that [T]axpayer participated in the management of MRC. Taxpayer was composed of two individual doctors. MRC was composed of several professional medical corporations and [T]axpayer. The same individuals that controlled [T]axpayer, controlled their medical corporations. Drs. Wasson and Bendon represented their corporation on the [Governing [B]oard of MRC. Thus, [T]axpayer[,] through Drs. Wasson and Bendon’s presence on the board[,] shared in the day[-]to[-]day management and control of MRC.
9. HRS § 425-118 permits the rights and duties of each partner in the partnership to be determined by agreement. In this instance!,] MRC has structured payment so that [T]axpayer received the first distribution of profits!] up to a specified limit[,] with the other partners dividing the remaining profit amongst themselves.
10. At no time during the years in question did the partnership suffer a yearly loss so that distributions could not be made. Thus, although no empirical evidence exists to show how MRC would distribute profits in such a year, the partnership agreement shows that [T]axpayer was at risk to the extent that profits were too low to allow for distribution of net profits. Furthermore, no evidence presented indicates that the [T]axpayer received anything other than payments from profits of MRC.
11. HRS § 237-20 taxes the business of a partner with the partnership, HRS § 237-20 does not make taxable, distributions to a partner of the proceeds of the investment made by the partner in the partnership! In re Island Holidays[,] *272 Ltd., 59 Haw. 307, 318 [582 P.2d 703], reh’g denied, 59 Haw. [408] 667 (1978).
12. “Business” is broadly defined by the [GET] laws as including “all activities (personal, professional, or corporate), engaged in or caused to be engaged in with the object of gain or economic benefit either direct or indirect,” with the exclusion only of casual sales. HRS § 237-2. Taxpayer’s activity of furnishing the use of medical equipment to MRC, in exchange for monthly payments, qualifies as “business” under this broad definition.
13. Under HRS § 237-20[,] the relationship between a partner and partnership is analogized to a corporation and its shareholders. [Id.] A corporation’s provision of managerial services to its subsidiary constitutes “business.” [In re Trade Wind Tours of Hawaii, Inc.], 6 Haw.App. 260, 718 P.2d 1122 (1986). Even distributive shares of joint venture income for services constitutes “business” and is not immune from GET liability. Island Holidays, 59 Haw. [at] 318[, 582 P.2d 703] (1978)[J
14.. The fact that [T]axpayer’s business activity was engaged in pursuant to obligations assumed under a joint venture agreement is not recognized in Chapter 237 as a ground for excluding it from the “business” characterization. [Id.] As stated in Island Holidays, if “the legislature intended that distributive shares of partnership income be immune from general excise taxation, that immunity was circumscribed by § 237-20.” [7d]
15. The payments to [T]axpayer[ ] qualify as “business” between a partner and the partnership[ ] under HRS § 237-20, and as such are subject to the [GET].
16. Estoppel is not an issue in this ease. The general rule in Hawaii is that estoppel does not apply against taxing authorities. Yamada v. Natural Disaster Claims [Comm’n], 54 Haw. 621, [513 P.2d 1001], decision modified, 55 Haw. 126, [516 P.2d 336] (1973). Furthermore, [the State] never made any affirmative representations, nor ever agreed to a settlement. [The State’s] conduct does not estop it from pursuing the assessments at hand.
II. The Issue on Appeal.
Taxpayer styles the question on appeal in a manner which presages its primary arguments on appeal:
Whether profits received by a partner from its partnership, which are not guaranteed payments and which are solely distributions to a partner of the proceeds of the investment made by the partner in the partnership, are taxable under H.R.S. § 237-13(10), the excise tax law?
The State counters with a less partisan but perhaps more illuminating statement of the question on appeal:
Does a partner’s activity of furnishing the use of medical equipment to a partnership in exchange for monthly payments constitute “business” between a partnership and a partner subject to the general excise tax [GET] or were the payments a GET exempt distribution to a partner of the proceeds of the investment made by the partner in the partnership?
III. Standard of Review.
Because the parties do not dispute the tax appeal court’s findings of fact, we review its decision under the right/wrong standard:
[I]t is well settled that, “in reviewing the decision and findings of the Tax Appeal Court, a presumption arises favoring its actions which should not be overturned without good and sufficient reason. The appellant has the burden of showing that the decision of the Tax Appeal Court was ‘clearly erroneous.’” Weinberg v. City and County of Honolulu, 82 Hawai'i 317, 322, 922 P.2d 371, 377 (1996) (citation omitted). Inasmuch as the facts here are undisputed and the sole question is one of law, we review the decision of the Tax Appeal Court “under the right/wrong standard.” Id. (citation omitted); Maile Sky Court Co., Ltd. v. City and County of Honolulu, 85 Hawai'i 36, 39, 936 P.2d 672, 675 (1997) (“The interpretation of a statute is a question of law.”).
Kamikawa v. Lynden Air Freight, Inc., 89 Hawaii 51, 54, 968 P.2d 653, 656 (1998).
*273 IY. General principles.
Hawaii’s general excise tax is imposed by (HRS) § 237-13; in operative part:
There is hereby levied and shall be assessed and collected annually privilege taxes against persons on account of their business and other activities in the State measured by the application of rates against values of products, gross proceeds of sales, or gross income, whichever is specified, as follows:
What follows in the statute are nine subsections setting general excise tax rates on specified business and activities not germane here, and a tenth, catch-all subsection applicable in this case:
(10) Tax on other business. Upon every person engaging or continuing within the State in any business, trade, activity, occupation, or calling not included in the preceding paragraphs or any other provisions of this chapter, there is likewise hereby levied and shall be assessed and collected, a tax equal to four per cent of the gross income thereof. In addition, the rate prescribed by this paragraph shall apply to a business taxable under one or more of the preceding paragraphs or other provisions of this chapter, as to any gross income thereof not taxed thereunder as gross income or gross proceeds of sales or by taxing an equivalent value of products, unless specifically exempted.
HRS § 237-13(10).
The Hawaii Supreme Court has described the enveloping nature of the general excise tax:
In form, it is a tax imposed upon entrepreneurs for the privilege of doing business; in effect, it is more. It has been characterized as “an amalgam of consumption, business and income taxation,” for the ultimate burden is often shifted forward to consumers.... The tax applies at all levels of economic activity from production or manufacturing to retailing, albeit at different rates, and to virtually all goods and services.
In re Central Union Church, 63 Haw. 199, 202, 624 P.2d 1346, 1349 (1981)(internal citation omitted). Or, as more succinctly put, “[r]ead as a whole, HRS § 237-13 subjects to the general excise tax virtually every economic activity imaginable.” Pratt v. Kondo, 53 Haw. 435, 436, 496 P.2d 1, 2 (1972).
Furthermore, escape from ensnarement by the tax is difficult. “In enacting Chapter 237, the legislature cast a wide and tight net.” In re Island Holidays, Ltd., 59 Haw. 307, 316, 582 P.2d 703, 708 (1978).
The fact that transactions in question are internal to an entity—for example, between a joint venture and one of its partners—is not ipso facto determinative. “[I]t matters not whether the business is conducted between related or unrelated persons or entities.” In re C. Brewer & Co., Ltd., 65 Haw. 240, 244, 649 P.2d 1155, 1157 (1982) (citation omitted)(addressing whether general excise taxes may be assessed upon the value of services a corporation rendered on behalf of or furnished to its wholly-owned subsidiary corporations and upon interest on funds it borrowed and disbursed on then-account).
Chapter 237, in a section entitled “Principles applicable in certain situations[,]” explicitly enfolds in its net “business” between a joint venture and its partner; in pertinent part:
A person or company having shareholders or members (a corporation, association, group, trust, partnership, joint adventure, or other person) is taxable upon its business with them, and they are taxable upon their business with it.
HRS § 237-20.
The critical term “business” is defined by HRS § 237-2:
“Business” as used in this chapter, includes all activities (personal, professional, or corporate), engaged in or caused to be engaged in with the object of gain or economic benefit either direct or indirect, but does not include casual sales.
In deciding whether a certain transaction is caught in the web of the general *274 excise tax, we look to the substance rather than the form of the transaction:
It is unquestionably proper and within the rights of a taxpayer to minimize and avoid taxation by any means the law permits if the method adopted produces an actual change in the basic facts affecting liability to taxation. However, in determining tax liability it is fundamental that substance, rather than the form of the transaction, governs. 84 C.J.S. Taxation, § 62, p. 166; 51 Am.Jur., Taxation, § 10, p. 43. Actualities and consequences of a commercial transaction, rather than the method employed in doing business, are controlling factors in determining such liability. “The refinements or technicalities of contracts and conveyances are not the true diagnostics of the taxability of a transfer. It is more efficient to put in contrast on the one side the substance and practical effect of what was actually done, and on the other the import and design of the terms of the taxing statute.” Bank of New York v. Kelly, 135 N.J.Eq. 418, 38 A.2d 899, 901. “The Government may look at actualities and upon determination that the form employed for doing business or carrying out the challenged tax event -is unreal or a sham may sustain or disregard the effect of the fiction as best serves the purposes of the tax statute. To hold otherwise would permit the schemes of taxpayers to supersede legislation in the determination of the time and manner of taxation.” Higgins v. Smith, 308 U.S. 473, 477, 60 S.Ct. 355, 84 L.Ed. 406. See also Knetsch v. United States, [364] U.S. [361], [365], 81 S.Ct. 132, 135, 5 L.Ed.2d 128; Boessow v. Johnson, 10 Cal.App.2d 578, 52 P.2d 505, 508; Collins v. Kentucky Tax Commission, 261 S.W.2d 303, 306 (Ky.App.); Drobner v. Chapman, 275 App.Div. 520, 90 N.Y.S.2d 302, 304.
In re Taxes, Kenneth K. Kobayashi, 44 Haw. 584, 590, 358 P.2d 539, 543 (1961).
We may, moreover, ignore the form for the substance even if the parties faithfully conform their dealings to the form of the transaction:
Although we agree with appellee’s contention that the initial contract was indivisible, that fact, and whatever effect it might have had on the private relationship of the contracting parties inter se, were not and could not be binding on the taxing authority or determinative of the tax consequences flowing from the transaction resulting from the performance of the contract.
Id. at 589, 358 P.2d at 542 (addressing whether the general excise tax was applicable to the part of the purchase price on an indivisible lot-and-house-to-be-built-thereon contract allocable to the construction of the house).
V. Discussion.
At the outset, we observe that of the five conclusions of law challenged by Taxpayer on appeal (CsOL 11, 12, 13, 14 and 15), CsOL 11, 13 and 14 are each either a correct paraphrase of or taken verbatim from its cited source of law. As such, they are not wrong.
Similarly, the first proposition in COL 12 is a correct paraphrase of the definition of “business” in HRS § 237-2. The second proposition correctly concludes that this broad, general definition comprehends the activity in question in this case. Insofar as this conclusion does not also compel the application of HRS § 237-20 to Taxpayer’s provision of medical equipment to its joint venture, it is likewise not wrong.
In essence, what Taxpayer is appealing is the dispositive conclusion contained in COL 15. The tax appeal court could have reached the opposite conclusion without rendering CsOL 11, 12, 13 and 14 in any wise wrong or superfluous. Taxpayer concedes as much in its reply brief: “Thus the [appellate court] is left with reviewing simply a conclusion of law: are partnership payments from profits to a partner taxable under the excise tax law?”
The tax appeal court’s findings of fact and conclusions of law, and unequivocal and undisputed evidence admitted at trial by stipulation of the parties, yield the following summary of the case.
Taxpayer was established as a general partnership between the two doctors, as indi *275 viduals. Before its admission into the Maui. Radiology Consultants (MRC) joint venture, Taxpayer supplied medical equipment and related services to MRC for a fixed, monthly rent under an equipment lease agreement. It is not disputed that Taxpayer’s receipt of the rent was subject to the general excise tax.
Before admitting Taxpayer into its joint venture, MRC allocated gross income first to payment of expenses, including the medical equipment lease rent. Profit, or loss, after expenses was allocated between the two professional corporation partners according to a fixed amount-then-pereentage formula.
For financial reasons, including avoidance of the general excise tax on the equipment lease payments, Taxpayer on October 1,1982 became a “non-physician joint venturer” in MRC with the two professional corporations, who thus became the “physician joint ventur-ers.” The role of Taxpayer in MRC was “to provide the use of equipment and facilities which are required by the Joint Venture to render quality medical services to the patients of the Joint Venture.” Taxpayer retained ownership of the medical equipment and provided it and ancillary services to MRC on a nonexclusive-use basis.
After payment of expenses, the resulting net income of MRC was allocated first to monthly payments to Taxpayer, which were fixed amounts for each piece of medical equipment, then between the “physician joint venturers” as determined by the governing board of MRC. Aside from the monthly payments, Taxpayer was not entitled to any share of the net income of MRC or required to bear any of the net loss of MRC. The monthly payments were to be equal to what the rent would be on a lease of the equipment.
By amendment to the MRC joint venture agreement effective April 1, 1984, the following language was inserted: “The payments to [Taxpayer] shall abate to the extent that the payments exceed Joint Venture net income.”
Upon these facts, Taxpayer poses the only question on appeal: Were MRC’s 1990 payments to Taxpayer on account of the medical equipment and ancillary services “business” between a joint venture and one of its partners made subject to the general excise tax by HRS § 237-20, or did they escape the tax because they were distributions to Taxpayer of the proceeds of its investment in the MRC joint venture?
The Hawai'i Supreme Court confronted substantially the same question in a very similar situation in Island Holidays, supra.
In Island Holidays, the appellant corporation was a member of a joint venture engaged in the financing, construction and operation of a hotel. Under the joint venture agreement, appellant was to operate, manage and maintain the hotel, for which it was to receive a guaranteed payment of 3% of the annual gross revenues from the hotel. The remaining net operating profit or loss was allocated among the joint venturers, including appellant, according to stated percentages. The question before the supreme court was whether the general excise tax applied to the 3% payments. Island Holidays, 59 Haw. at 307-09, 582 P.2d at 704-05.
After discussing the same general principles we have outlined above, the supreme court observed that,
merely by making taxable the business of a partner with the partnership, [HRS] § 237-20 does not make taxable distributions to a partner of the proceeds of the investment made by the partner in the partnership which are not taxable otherwise.
Island Holidays, 59 Haw. at 317, 582 P.2d at 709.
The supreme court nevertheless held that “[t]he activities of Appellant which produced the income sought to be taxed here are clearly within the broad definition of ‘business’ contained in [HRS] § 237-2[,]” and thus concluded that the 3% payments were subject to the general excise tax. Island Holidays, 59 Haw. at 318, 582 P.2d at 709.
The fundamental nature of the income-producing activities in this case being “clearly within the broad definition of ‘business’ contained in [HRS] § 237-2,” we might conclude, consistent with the ostensible holding in Island Holidays, that the payments to *276 Taxpayer on account of the medical equipment and ancillary services were subject to the general excise tax.
But we consider such an approach too monolithic for universal application. The definition of “business” in HRS § 237-2 encompasses virtually every conceivable economic activity. To give the term literal effect where it occurs in HRS § 237-20, as one might plug in a certain number for a variable in an equation, would render nugatory the Island Holidays exception to the general excise tax for “distributions to a partner of the proceeds of the investment made by the partner in the partnership!!.]”
We believe the true rationale of Island Holidays lies in the approach outlined by the supreme court at the outset of its analysis:
In the somewhat confusing circumstances of the present case, we find our inquiry narrowed to the question whether the payments to Appellant should be characterized as distributive shares of partnership income (not taxable under the Director’s concession) or as income from business engaged in by Appellant with the partnership (taxable under HRS § 237-20). These categories overlap and it is necessary to draw a line between them.
Island Holidays, 59 Haw. at 316, 582 P.2d at 708 (emphasis added). We adopt such a case-by-case approach here, considering the totality of the circumstances surrounding the transactions in question as well as the transactions themselves.
That approach requires rejection of the two primary arguments advanced by Taxpay1 er on appeal.
Taxpayer first argues that because the tax appeal court indisputably concluded that Taxpayer was a partner in MRC (COL 4), and that “no evidence presented indicated that [TJaxpayer received anything other than payments from profits of MRC[ ]” (COL 10), Island Holidays compels a conclusion of exemption by its statement that,
merely by making taxable the business of a partner with the partnership, [HRS] § 237-20 does not make taxable distributions to a partner of the proceeds of the investment made by the partner in the partnership which are not taxable otherwise.
Island Holidays, 59 Haw. at 317, 582 P.2d at 709. In Taxpayer’s words,
[t]he reason the Tax Appeal Court should be reversed is that once it found that Taxpayer was paid only from profits, it had to conclude, hold and decide that the profits received by Taxpayer were not subject to the excise tax. [The State’s] Answering Brief erroneously argues that this Court has to determine if profits are a return on Taxpayer’s investment in [MRC] or revenue from engaging in business with [MRC]. By definition, profits are return on Taxpayer’s investment in [MRC], and nothing else. The excise tax applies to “gross proceeds” and “gross income,” not profits. Thus, the payments received by Taxpayer from MRC are not subject to the excise tax.
Like the ostensible holding in Island Holidays, however, Taxpayer’s argument easts too wide a net.
Imaginative accounting can draw the formal line between payments from gross income and payments from profits anywhere along a continuum of payments, indeed, far enough back to render HRS § 237-20 an empty vessel. Our ad hoc approach looks deeper for the substance than that. See Kobayashi, 44 Haw. at 590, 358 P.2d at 543.
Moreover, there is no ipse dixit granted in the general excise tax law to what a business might choose to call “profit.” Brewer, 65 Haw. at 246, 649 P.2d at 1159 (“the Director [of Taxation] is by no means bound by [taxpayer’s] accounting practices” (citation omitted)).
And the tax appeal court’s conclusion that Taxpayer was paid out of profits could not foreclose it from the deeper search for substance required by the supreme court in the several cases we have cited. Nor was it an imprimatur so dazzling that this court must refrain from a penetrating examination of the true substance of the transactions.
In Island Holidays the supreme court rejected an argument identical to the one advanced by Taxpayer:
*277 Any payment to a partner for services provided to the partnership, whether or not labelled as a distribution of partnership income, reduces the income available for distribution to the partners and has the effect of a distribution of income.... To give effect to HRS § 237-20, the fact that the payment to the partner, with respect to business engaged in with the partnership, constitutes in the broad sense a distributive share of partnership income cannot be treated as controlling.
Island Holidays, 59 Haw. at 316-17, 582 P.2d at 708-09.
The same conflation of label with substance infects Taxpayer’s other primary argument on appeal.
The April 1, 1984 amendment to the joint venture agreement made explicit what was implicit in the original joint venture arrangement—that the payments to Taxpayer would abate to the extent joint venture income was insufficient. Because this facet of the business arrangement imbued the payments with the characteristic of contingency usually associated with profits, as opposed to the fixed nature of lease rent, Taxpayer contends that its receipts were profit exempt from the general excise tax under the logic of Island Holidays.
This argument ignores the obvious, that all payments out of a business entity are contingent. If a business makes no money, its vendors, including its lessors, bite the bare hook along with its investors.
To Taxpayer’s rejoinder that the vendors then have a dunning cause of action against the business entity, while the investors have no legal recourse as to their expected profits, the simple answer is that the substance of the exceptionally close transactions in this case, involving no one and nothing other than the two doctors and their various business personae, indicates that in this case at least, this distinction is one of mere form without persuasion.
Here again, it is mere designation which ultimately determines whether the tide of income marks the line of abatement in profit or expense along the continuum of payments. This is not a designation of substance for our purposes, so one we cannot accept as an ipse dixit compelling legal conclusion. Brewer, 65 Haw. at 246, 649 P.2d at 1159.
In deciding whether there was a true change of essence behind the transfiguration, we look to the basic substance of the change from lease of equipment to joint venture capital contribution. Cf Brewer, 65 Haw. at 245-46, 649 P.2d at 1158-59 (in looking at “the substance rather than the form” of a corporation’s transactions with its wholly-owned subsidiaries, the supreme court considered similar transactions the corporation had with its partially-owned subsidiaries, upon which it did pay general excise taxes).
Before Taxpayer’s induction into the joint venture, MRC made the medical equipment lease payments, under an equipment lease agreement, out of gross income as an expense item before profits. This transaction was indisputably subject to the general excise tax:
[[Image here]]
After induction, Taxpayer retained ownership of the medical equipment. MRC continued to utilize it on a nonexclusive-use basis. The payments on account of the equipment remained fixed amounts monthly, and were to be equivalent to what the rent would be on an equipment lease. But Taxpayer received payment on account of the equipment out of profits instead of gross income. Yet Taxpayer continued to receive its payments before any distribution to the “physician joint ven-turers”:
[[Image here]]
lt is graphically clear that the primary effect of the change in business form and its associated accounting legerdemain was a simple relocation of the bottom line from below to above the payments on account of *278 the medical equipment. This was a change in form and form alone.
We have rejected, supra, the semantic and conceptual distinctions arising out of the change in form, urged upon us as dispositive by Taxpayer, as distinctions without a difference for our purposes. We can discern, therefore, little substantive change in the nature of the transactions pertinent to HRS § 237-20.
Following the general principles prefacing this discussion, we ignore the changed form for the unchanged substance, the conforming operational and accounting changes undertaken by Taxpayer and MRC notwithstanding. Reiterating the words of the supreme court at this point may be apropos:
The Government may look at actualities and upon determination that the form employed for doing business or carrying out the challenged tax event is unreal or a sham may sustain or disregard the effect of the fiction as best serves the purposes of the tax statute. To hold otherwise would permit the schemes of taxpayers to supersede legislation in the determination of the time and manner of taxation.
Kobayashi, 44 Haw. at 590, 358 P.2d at 543 (internal quotation marks and citations omitted).
Thereupon, we arrive at the same conclusions the supreme court reached in Island Holidays:
The fact that those activities were engaged in pursuant to obligations assumed by Appellant in a joint venture or partnership agreement is not recognized in Chapter 237 as a ground for excluding them from the “business” characterization. The concepts employed by the legislature in writing the general excise tax law do not readily admit such an exclusion and we find no implication that the legislature intended that Appellant’s receipts be free from taxation. If, as the Director concedes in this case, the legislature intended that distributive shares of partnership or joint venture income be immune from general excise taxation, that immunity was circumscribed by § 237-20. We conclude, therefore, that the payments to the Appellant by the joint venture in this case were subject to tax.
Island Holidays, 59 Haw. at 318, 582 P.2d at 709.
In this particular case, at least, a lease by any other name is still a lease, and all the camouflage in the world cannot protect it from the omnipresent snare of the general excise tax.
The camouflage employed by Taxpayer painted, moreover, a less-than-perfect picture.
We question, for example, the joint venture’s acceptance of a capital contribution from a partner consisting solely of equipment that remains the property of the partner available to the joint venture on a merely nonexclusive, unspecified basis. We see such a factor as pertinent to the question of ultimate substance.
Furthermore, we observe in the record several instances, in which Taxpayer’s own statements betrayed the substance of its purported form. For example, Taxpayer’s tax returns from 1982 through the year in question consistently described its business as “equipment rental.”
We conclude, therefore, that the transactions in this particular case were “business” between Taxpayer and MRC made subject to the general excise tax by HRS § 237-20.
VI. Disposition.
Accordingly, we affirm the November 18, 1998 Judgment of the tax appeal court and its March 23, 1999 Order Denying Taxpayer’s Rule 52(b) Motion to Amend Findings and Make Additional Findings and Amend Judgment.